## NOTE.

Soon after judgment was rendered in the case which precedes, was decided also another case under the same acts of Congress, but presenting a state of facts distinguishing it from that case. It was the case of

### UNITED STATES *v.* GROSSMAYER.

1. Intercourse during war with an enemy is unlawful to parties standing in the relation of debtor and creditor as much as to those who do not.
2. Conceding that a creditor may have an agent in an enemy's country to whom his debtor there may pay a debt contracted before the war, yet the agent must be one who was appointed before the war. He cannot be one appointed during it.
3. A transaction originally unlawful—such as a person's unlawful trading in behalf of another with an enemy—cannot be made lawful by any ratification.

THIS case, like the one immediately preceding, was an appeal from the Court of Claims, and was thus:

Elias Einstein, a resident of Macon, Georgia, was indebted, when the late rebellion broke out, to Grossmayer, a resident of

---

* 8 Wallace, 163.

New York, for goods sold and money lent, and while the war was in progress a correspondence on the subject was maintained through the medium of a third person, who passed back and forth several times between Macon and New York. The communication between the parties resulted in Grossmayer requesting Einstein to remit the amount due him in money or sterling exchange, or, if that were not possible, to invest the sum in cotton and hold it for him until the close of the war.

In pursuance of this direction—and, as it is supposed, because money or sterling exchange could not be transmitted—Einstein purchased cotton for Grossmayer, and informed him of it; Grossmayer expressing *himself satisfied with the arrangement.* The cotton was afterwards shipped as Grossmayer's to one Abraham Einstein, at Savannah, who stored it there in his own name, in order to prevent its seizure by the rebel authorities. It remained in store in this manner until the capture of Savannah, in December, 1864, by the armies of the United States, when it was reported to our military forces as Grossmayer's cotton, and taken by them and sent to New York and sold.

Grossmayer now preferred a claim in the Court of Claims for the residue of the proceeds, asserting that he was within the protection of the Captured and Abandoned Property Act.

That court considering that the purchase by Elias Einstein for Grossmayer was not a violation of the war intercourse acts set forth in the preceding case, decided that he was so, and gave judgment in his favor. The United States appealed.

*Mr. George Taylor, for Grossmayer, and in support of the judgment below :*

The cotton, the proceeds of which are in question, was purchased during the rebellion, by an *agent* of the claimants, residing within the Confederacy, and therefore was not a violation of the Non-intercourse Act; it being a settled principle of public law that a citizen of a country at war with another may have an agent in the enemy's country, and may enforce the contracts or accept the beneficial acts of his agent after peace; and, in this respect, he may do by an agent what he could not do himself.*

---

* Potts *v.* Bell, 8 Term, 548; Denniston *v.* Imbrie, 3 Washington Circuit Court, 396; Paul *v.* Christie, 4 Harris & McHenry, 161; Buchanan *v.* Curry, 19 Johnson, 137; Ward *v.* Smith, 7 Wallace, 452.

Even if the messages from Grossmayer to his agent were ille-gal, and no authority were given to the agent, yet the agent had a right, voluntarily on his own motion, to purchase and appropriate this property to his creditor, and by the appropriation of it, and the shipment of it to Savannah for storage for him, the title passed, subject only to the ratification of Grossmayer.*

The case shows that the purchase was ratified by Grossmayer. Claiming the cotton, and instituting suit for it, is itself a ratification. This ratification reverts back, and is equivalent to a previous permission or command.

*Mr. Hoar, Attorney-General, and Mr. R. S. Hale, special counsel for the United States, contra.*

Mr. Justice DAVIS delivered the opinion of the court.

Grossmayer insists that he is within the protection of the Captured and Abandoned Property Act, but it is hard to see on what ground he can base this claim for protection. It was natural that Grossmayer should desire to be paid, and creditable to Einstein to wish to discharge his obligation to him, but the same thing can be said of very many persons who were similarly situated during the war, and if all persons in this condition had been allowed to do what was done in this case, it is easy to see that it would have produced great embarrassment and obstructed very materially the operations of the army. It has been found necessary, as soon as war is commenced, that business intercourse should cease between the citizens of the respective parties engaged in it, and this necessity is so great that all writers on public law agree that it is unlawful, without any express declaration of the sovereign on the subject.

But Congress did not wish to leave any one in ignorance of the effect of war in this regard, for as early as the 13th of June, 1861, it passed a Non-intercourse Act, which prohibited all commercial intercourse between the States in insurrection and the rest of the United States. It is true the President could allow a restricted trade, if he thought proper; but in so far as he did

---

* Ogle *v.* Atkinson, 5 Taunton, 759; Mitchel *v.* Ede, 11 Adolphus & Ellis, 888; Fowler *v.* Down, 1 Bosanquet & Puller, 47; Wilkes *v.* Ferris, 5 Johnson, 335; Coit *v.* Houston, 3 Johnson's Cases, 243, and remarks upon it in 19 Wendell, 517.

allow it, it had to be conducted according to regulations prescribed by the Secretary of the Treasury.

There is no pretence, however, that this particular transaction was authorized by any one connected with the Treasury Department, and it was, therefore, not only inconsistent with the duties growing out of a state of war, but in open violation of a statute on the subject. A prohibition of all intercourse with an enemy during the war affects debtors and creditors on either side, equally with those who do not bear that relation to each other. We are not disposed to deny the doctrine that a resident in the territory of one of the belligerents may have, in time of war, an agent residing in the territory of the other, to whom his debtor could pay his debt in money, or deliver to him property in discharge of it, but in such a case the agency must have been created before the war began, for there is no power to appoint an agent for any purpose after hostilities have actually commenced, and to this effect are all the authorities. The reason why this cannot be done is obvious, for while the war lasts nothing which depends on commercial intercourse is permitted. In this case, if Einstein is to be considered as the agent of Grossmayer to buy the cotton, the act appointing him was illegal, because it was done by means of a direct communication through a messenger who was in some manner not stated in the record able to pass, during the war, between Macon and New York. It was not necessary to make the act unlawful that Grossmayer should have communicated personally with Einstein. The business intercourse through a middle man, which resulted in establishing the agency, is equally within the condemnation of the law

Besides, if, as is conceded, Grossmayer was prohibited from trading directly with the enemy, how can the purchase in question be treated as lawful when it was made for him by an agent appointed after his own disability to deal at all with the insurgents was created?

It is argued that the purchase by Einstein was ratified by Grossmayer, and that being so the case is relieved of difficulty; but this is a mistaken view of the principle of ratification, for a transaction originally unlawful cannot be made any better by being ratified.

In any aspect of this case, whether the relation of debtor and creditor continued, or was changed to that of principal and agent, the claimant cannot recover.

As he was prohibited during the war from having any deal-
ings with Einstein, it follows that nothing which both or either
of them did in this case could have the effect to vest in him the
title to the cotton in question.

Not being the owner of the property he has no claim against
the United States.

The judgment of the Court of Claims is REVERSED, and the
cause is remanded to that court with directions to enter an
order
                              DISMISSING THE PETITION.