## GOODWIN *v.* UNITED STATES.

In August, 1865, at the close of the rebellion, A. chartered a vessel to the United States, at a fixed sum per day, to carry military stores from Wilmington, North Carolina, to the city of New York, A. warranting her to be then " tight, staunch, and strong," and agreeing that while in the service of the government she should be kept so, and that the time lost by her not being so should not be paid for by the government; " the war risk to be borne by the United States, the *marine risk by the owners.*" On her voyage she sprung a leak and put into the island of St. Thomas, raised money there on a bottomry bond, and with it was repaired. Arriving in New York, and the bottomry bond not being paid, the vessel and cargo were libelled by the holder of the bond, attached by the marshal, and retained by him from the 10th of March to the 30th of July, a space of one hundred and forty-four days; when a decree was made against the vessel, and the cargo was liberated. The vessel was discharged from the service of the United States on the 7th of August following.

On a suit in the Court of Claims by A. to recover the per diem of $50 a day, for the one hundred and forty-four days, during which the vessel was detained by the marshal, *held* that the United States was not liable for a per diem during that term; that the detention was incident to the " marine risk," which the owner had expressly assumed, and that the United States not having been blameworthy, there was nothing to shift the burden from the party on whom the contract placed it.

APPEAL from the Court of Claims, in which court one Goodwin, who had chartered a schooner to the United States, at a fixed per diem, sought to recover the per diem during one hundred and forty-four days in which, under the circumstances hereinafter mentioned, the vessel had been detained by the marshal of the United States on a libel filed against her.

The Court of Claims dismissed his petition, and Goodwin took this appeal.

*Mr. T. J. D. Fuller, for the appellants; Messrs. G. H. Williams and C. H. Hill, contra.*

Mr. Justice SWAYNE stated the case, and delivered the opinion of the court.

The charter-party out of which this controversy has arisen

is dated on the 26th of August, 1865. It stipulates, among other things (1), that the schooner was then, and while in the service of the government should be kept, "tight, staunch, and strong," at the cost of the owners, and that the time lost by any deficiency in these respects should not be paid for by the United States. "The war risk to be borne by the United States, the marine risk by the owners." (2) The United States agreed to pay $50 per day for the time the vessel was engaged in their service.

On the 17th of November, 1865, pursuant to the charter-party, the schooner left Wilmington, in North Carolina, for the port of New York, laden with ordnance and ordnance stores. On her way she sprung a leak and was compelled to bear away and put into the port of St. Thomas, in the West Indies, for repairs. There the captain executed a bottomry bond, binding the vessel and cargo, and amounting, principal and interest, to $17,399.71. Having received the necessary repairs the vessel left St. Thomas on the 26th of January, 1866, and reached New York on the 13th of February ensuing. There, the bottomry bond not being paid at maturity, the vessel and cargo were libelled in the District Court, and, on the 10th of March, they were attached on that proceeding. The District Court dismissed the libel. An appeal was taken to the Circuit Court. That court affirmed the decree as to the cargo but reversed it as to the vessel, and finally decreed against the latter for the amount due on the bond. The vessel was held by the marshal under the attachment from the 10th of March until the 30th of July. She was discharged from the service of the United States on the 7th of August.

A claim was made against the United States in general average. It was adjusted and paid to the satisfaction of the owners. All the per diem compensation claimed has also been paid except that for the time the vessel was in the hands of the marshal. Whether the claim for general average, and that for the time lost by the vessel in deviating from her course, going to St. Thomas, there awaiting repairs, and going thence to her port of destination, were not

covered by the marine risk she had assumed, are questions not before us, and which we need not, therefore, consider.

The claim of per diem compensation for the time the marshal held the vessel, is the only ground of controversy between the parties, and it is the only subject open for examination in this case.

During that time, she was in the custody of the law, she was in no wise in the employment of the United States nor subject to their control. She did not, and could not render them any service while thus held.

The United States had not stipulated to pay in such a contingency. On the contrary, the detention was incident to the marine risk which the owners had expressly assumed. It was a fruit of that peril. The United States are not blameworthy, and not responsible. The contract puts all such burdens upon the shoulders of the owners. Those burdens cannot be shifted and thrown upon the other party.

JUDGMENT AFFIRMED.