Mr. Justice S "WAYNE
delivered the opinion of the court.
This is an appeal from the Court of Claims. That court found the following facts :
At the beginning of the late rebellion, Mitchell, the late claimant and appellant, lived in Louisville, Ky. He was engaged in business there. In July, 1861, and after the 17th of that month, he procured from the proper military authority of the United States in Kentucky a .pass, permitting him to go through the Army lines into the insurrectionary territory. He thereupon went into the insurgent States, and remained there until the later part of the year 1864. He then returned to Louisville. While in the Confederate States he transacted business, collected debts, and purchased from different parties seven hundred and twenty-four bales of cotton. He took possession of the cotton and stored it in Savannah. Upon the capture of that place by General Sherman the cotton was seized by the military authorities. It was subsequently sold by the agents of the Government. The proceeds, amounting to the sum of $128,692.22, are in the Treasury. Mitchell bought the cotton in November and December, 1864. He remained within the insurrectionary lines from July, 1861, until after the capture of Savannah by the arms of the United States.
The Court of Claims was equally divided in opinion and dis *132 missed the petition. The claimant has removed the case to this court by appeal.
When Mitchell passed within the rebel lines the war between the loyal and disloyal States was flagrant. It speedily assumed the lagest proportions. Important belligerent rights were conceded by the United States to the insurgents. Their soldiers, when captured, were treated as prisoners of war, and were exchanged and not held for treason. Their vessels, when captured, were dealt with by our prize courts. Their ports were blockaded, and the blockades proclaimed to neutral nations. Property taken at sea, belonging to persons domiciled in the insurgent States, was uniformly held to be confiscable as enemy property. All these things were done as if the war had been a public one with a foreign nation. (The Prize Oases, 2 Black, 687; Mrs. Alexander’s Cotton, 2 Wall., 417; Mauran v. The Insurance Company, 6 id., 1.) The laws of war were applied in like manner to intercourse on land between the inhabitants of the loyal and the disloyal States.
It was adjudged that all contracts of the inhabitants of the former with the inhabitants of the latter were illegal and void. It was held that they conferred no rights which could be recognized. Such is the law of nations flagrante hello as administered by courts of justice. (Vattel, § 220; Griswold v. Waddington, 16 Johns., 438; Cooledge v. Guthrie, 8 Am. Law Reg., N. S., 20; Coppel v. Hall, 7 Wall., 542; Grossmeyer’s Case, 9 Wall., 72; Montgomery’s Case, 15 Wall., 400; Lapine & Ferre’s Case, 17 Wall., 602; Cutner’s Case, 17 Wall., 516.)
While such was the law as to dealings between the inhabitants of the respective territories, contracts between the inhabitants of the rebel States, not in aid of the rebellion, were as valid as those between themselves and the inhabitants of the loyal States.'
Hence this case turns upon the point whether the appellant was domiciled in the Confederate States when he bought the cotton in question.
When he took his departure for the South, he lived and was in business at Louisville. He returned thither when Savannah was captured and his cotton was seized.
It is to the intervening tract of time we must look for the means of solving the question before us.
There is nothing in the record which tends to show that *133 when he left Louisville he did not intend to return, or that while in the South he had any purpose to remain, or that when he returned to Louisville he had any intent other than to live there, as he had done before his departure.
Domicile has been thus defined:
“A residence at a particular place, accompanied with positive or presumptive proof of an intention to remain there for an unlimited time.” (Guer v. Daniels, 1 Binney, 349, note.)
This definition is approved by Phililmore in his work on the subject, (p. 13.)
By the term domicile, in its ordinary acceptation, is meant, the place where a person lives and has his home. (Story’s Confl. of Laws, § 41.)
The place where a person lives is taken to be his domicile until facts adduced establish the contrary. (Bruce v. Bruce, 2 Bos. & Pull., 228, note; Bampde v. Johnstone, 3 Ves., 201; Stanley v. Bernes, 3 Hagg. Ecl. Rep., 374,437; Best on Presumptions, 235.)
The proof of the domicile of the claimant at Louisville is sufficient. There is no controversy between the parties on that proposition. Wé need not, therefore, further consider the subject.
A domicile once acquired is presumed to continue until it is shown to have been changed. (Somerville v. Somerville, 5 Ves., 787; Harvard College v. Gore, 5 Pick., 370; Whart. Confl. of Laws, § 55.)
Where a change of domicile is alleged, the burden of proving it rests upon the person making the allegation. (Crookenden v. Fuller, 1 Sw. & Tr., 441; Hogsdon v. De Buchesne, 12 Moore P. C., 1858, p. 288.)
To constitute the new domicile, two things are indispensable: First, residence in the new locality; and, second, the intention to remain there. The change cannot be made except facto et animo. Both are alike necessary. Either without the other is insufficient. Mere absence from a fixed home, however long continued, cannot work the change. There must be the animus to change the prior. domicile for another. Until the new one is acquired, the old one remains. (Whart. Confl. of Laws, supra, and the authorities there cited.)
These principles are axiomatic in the law upon the subject.
When the claimant left Louisville, it would have been illegal *134 to take up Ms abode in the territory wMther be was going. Such a purpose is not. to be presumed. The presumption is the other way. To be established, it must be proved. (12 Moore, P. C., supra.) Among the circumstances usually relied upon to establish the animus manendi are declarations of the party, the exercise of political rights, the payment of personal taxes, a house of residence, and a place of business. (Phillim., 100; Whart., § 62, and post.) All these indicia are wanting in the case of the claimant.
The rules of law applied to the affirmative facts, without the aid of the negative considerations to which we have adverted, are conclusive against him. His purchase of the cotton involved the same legal consequences as if it had been made by an agent whom he sent to make it.
Obviously important further facts bearing on the question might easily have been put in evidence by either party. We regret that it was not done. As the case is presented, our conclusion is necessarily adverse to the appellant.
The judgment of the Court of Claims is affirmed.