[Civil No. 3307.  Filed December 7, 1934.]

[38 Pac. (2d) 648.]

NATIONAL UNION INDEMNITY COMPANY, a Corporation, Appellant, v. BRUCE BROS., INC., a Corporation, Appellee.

Messrs. Armstrong, Kramer, Morrison & Roche, for Appellant.

Mr. Henderson Stockton, Mr. Emmet M. Barry and Mr. Eli Gorodezky, for Appellee.

LOCKWOOD, J.—This is an appeal from a judgment against H. L. Scott and National Union Indemnity Company, the latter hereinafter called the company, and in favor of Bruce Bros., Inc., hereinafter called the plaintiff.

The circumstances out of which the action arose may be briefly stated as follows: On the 31st of May, 1930, plaintiff, which was a corporation incorporated under the laws of the state of Nevada, entered into a contract with the state of Arizona, whereby it obligated itself to furnish all the labor and material for the construction of a portion of the state highway system designated as Federal Aid Project 94C, Schedule 1, which lay between Coolidge and Picacho Junction on the Florence-Tucson highway, and a suitable bond covering the contract was given by plaintiff to the state. Shortly thereafter plaintiff and defendant H. L. Scott entered into a written contract by which Scott agreed to deliver to plaintiff certain gravel required in the completion of the aforesaid job. This contract, however, instead of referring to the work as to be performed on Federal Aid Project 94C, Schedule 1, stated that it was to be done on Federal Aid Project No. 7, which was an entirely different and distinct project located a number of miles from the one plaintiff was building, and in the construction of which neither plaintiff nor defendant Scott had any interest whatever. To guarantee the performance of his contract, defendant Scott obtained a bond from the company. This bond on its face covered Federal Aid Project No. 7 from Coolidge to

Apache Junction, but the original application therefor made by Scott and delivered to the company's general agent in Phoenix refers to the location of the work as "highway between Coolidge and Picacho Junction, Arizona," which was the location of Federal Aid Project 94C, Schedule 1. Some time thereafter Scott formed a corporation known as the H. L. Scott Construction Company, the stockholders of which consisted of Scott, his wife, and two men named Butler and Hamilton, and the actual work of delivery of gravel was, to the knowledge of plaintiff, done by it. Much of the gravel provided for by the contract was delivered during the months of August and September, 1930, but on the 19th of September plaintiff took over the work on the ground that Scott had defaulted in various provisions of his contract, and carried it on to completion, notifying the company in October of the default. Thereafter and on the 19th day of March, 1931, plaintiff instituted this action against Scott and the company, seeking to recover from Scott the amount which it claimed it had been obliged to expend in excess of the contract price in finishing the work, and from the company the principal sum of its bond.

Various pleadings were filed which we need not consider, but on the 21st day of May a third amended complaint was filed upon which the case eventually went to trial. In this latter for the first time it was set up that there had been a mutual mistake in the Scott contract and the bond of the company for the performance thereof in that the project on which the work was to be done was incorrectly described therein, and it was asked that the contract and bond be reformed in accordance with the true intent of the parties, and for judgment along the general lines above set forth. To this third amended complaint the company filed (a) a general demurrer; (b) a plea

in abatement; (c) a motion to strike; (d) a plea in bar; (e) a special demurrer; and finally (f) an answer. The court overruled all the special pleadings except the plea in abatement and the plea in bar. The answer to the plea in abatement disposed of that matter, and it was agreed that the plea in bar should be heard at the same time as the trial on the merits. This plea in bar filed by the company alleged that plaintiff was a foreign corporation which had for a long time been conducting business as a general construction company in Arizona; that it had never complied with any of the requirements of the laws of Arizona and was not authorized to do business therein, and therefore was not entitled to bring the action. The answer to the plea in bar alleged that the company had answered to the merits on the original and the various amended complaints and filed many special pleadings thereto, and had by so doing estopped itself from setting up the matters alleged in the plea in bar.

When the trial opened defendant Scott, who had theretofore filed a cross-complaint against plaintiff, dismissed his cross-complaint and attempted to file a plea in bar raising the same issues as that of the company. Upon an avowal of surprise on the part of the plaintiff, the court refused to allow such plea to be filed unless and until all the costs incurred to date by plaintiff were paid by Scott. This he declined to do and the plea was not filed. The case then proceeded to trial, and, on the plea in bar, which was heard first, the court ruled that the company had not sustained the burden of proof imposed by law upon it and overruled the plea. On the merits of the case, the court held the evidence showed that there had been a mutual mistake and ordered the contract reformed to show that it and the bond applied to Federal Aid Project 94C, Schedule 1. A very great mass of evidence was then offered and introduced in re-

gard to what work had been done under the contract, what was still to be done when plaintiff took it over, and the cost of completing it. At the conclusion of plaintiff's case, a motion for an instructed verdict was made by defendant which was denied, and the same motion was renewed and denied at the end of defendant's case. After the court instructed the jury, a verdict was returned in favor of plaintiff, and, judgment being entered thereon, after the usual motion for new trial was made and overruled, this appeal was taken.

There are forty-four assignments of error, raising a number of very interesting legal questions. The first six deal with the question of whether or not plaintiff was authorized to maintain this action, and we consider them together. Section 657, Revised Code of 1928, provides, in substance, that any foreign corporation before entering upon any business in Arizona shall do certain things, and section 658 reads as follows: .

"658. *Acts Void Unless Statutes Complied With.* No foreign corporation shall transact any business in this state until it has complied with the requirements of the preceding section, and every act done by said corporation prior thereto shall be void."

It is urged that since plaintiff admittedly had not complied with the provisions of section 657, *supra,* before entering into or completing the contract with the state above referred to, the bond sued on by the terms of section 658 is void, and plaintiff therefore cannot maintain this suit against either Scott or the company.

The first question which we have to consider is whether or not plaintiff was, within the meaning of section 658, *supra,* transacting any business in the state of Arizona. This provision is found, in substance, in all of our Codes since and including the

Code of 1887, and, while the exact language has changed from time to time, we have held the meaning has remained the same. *McKee* v. *Stewart Land & Livestock Co.*, 28 Ariz. 511, 238 Pac. 326, 327.

There have been many cases before us involving a construction and application of the section. The first is *Babbitt* v. *Field*, 6 Ariz. 6, 52 Pac. 775, 776. Therein it appeared that a foreign corporation, not qualified to do business in Arizona under the statute, loaned certain money to a resident of Arizona and took as security therefor a trust deed covering certain realty within the state, and at some time thereafter entered into an agreement with the owner of the land that it would release the trust deed in consideration of the owner erecting certain buildings thereon. So far as the record shows, the corporation had never attempted to do any other business within the state of Arizona, and we said:

" . . . The doing of a single act of business in the territory by a foreign corporation does not constitute the carrying on of business, within the reasonable construction of the provisions of the chapter relied upon. . . . "

The same question was again before us in *Martin* v. *Bankers' Trust Co.*, 18 Ariz. 55, 156 Pac. 87, 90, Ann. Cas. 1918E 1240. Therein the foreign corporation accepted a trust deed on real property in Arizona for the benefit of certain bondholders, such deed being accepted, executed, and acknowledged by it in the state of New York and thereafter acknowledged and recorded by the other party in Arizona, and all acts performed by the trustee in connection with it were performed in New York, except the bringing of a suit of foreclosure. We said in reference thereto:

"Even if the prosecution of this suit could be considered as an act of business, it has been held by the

Supreme Court of the territory that a single act does not constitute a transaction of business in Arizona within the meaning of the statute. . . . ''

A similar question arose in *Nicolai* v. *Sugarman Iron & Metal Co.*, 23 Ariz. 230, 202 Pac. 1075. Therein a party agreed to sell to the foreign corporation certain scrap iron, to be shipped from Arizona to California, and, such party having failed to comply with the contract, suit was brought by the foreign corporation. We again referred to *Babbitt* v. *Field, supra,* and held that the entering into one contract did not constitute the carrying on or doing of business in Arizona.

Again in *Monaghan & Murphy Bank* v. *Davis*, 27 Ariz. 532, 234 Pac. 818, 819, it appeared that the foreign corporation had loaned certain money to a party without the state and had taken a mortgage on property within Arizona as security therefor. We referred to the three cases previously cited and again held '' . . . that, to come within the statute, a corporation must be engaged in an enterprise of some permanence and durability, and must transact within the state some substantial part of its ordinary business, and not merely a single act. . . . ''

Later in *McKee* v. *Stewart Land & Livestock Co., supra,* a similar question was raised and we referred to the four preceding cases, stating:

''We have held in four different cases 'that to come within the statute a corporation must be engaged in an enterprise of some permanence and durability and must transact within the state some substantial part of its ordinary business, and not merely a single act.' [Citing cases.]''

These five cases cover all the instances in which we have determined specifically what does or does not constitute transacting business within the statute,

although in *Eastlick* v. *Hayward Lumber & Invest. Co.,* 33 Ariz. 242, 263 Pac. 936, we discussed the effect of a foreign corporation, duly authorized to do business, failing to appoint a new agent when the old one had absented himself from the county in which his appointment was filed, and in *Woodward et al.* v. *Fox West Coast Theaters,* 36 Ariz. 251, 284 Pac. 350, we held that preliminary negotiations, leading up to the execution of a lease held before the corporation had become authorized to do business, did not affect the validity of the lease, when before its actual execution the corporation had complied with the statute.

It will be seen from these cases that we have held an isolated act of business done or contract entered into in Arizona does not bring the foreign corporation within the statute, and that to come within it "a corporation must be engaged in an enterprise of some permanence and durability, and must transact within the state some substantial part of its ordinary business, and not merely a single act." With this rule for our guidance, let us determine whether plaintiff was transacting business in Arizona. It appears clearly from the evidence received and that offered and legally admissible, but rejected by the court, that plaintiff was incorporated under the laws of Nevada, and that its principal business was the constructing of highways wherever it could obtain a contract so to do. It was thus a peripatetic institution, not necessarily having a fixed and permanent place where it conducted its operations, in the sense that ordinary manufacturing and commercial institutions do. All of its operations might at one time be within the state of Nevada, at a second within the state of California, and at a third within the state of Utah, or it might be engaged simultaneously in the construction of highways within the three states. The evidence is con-

clusive to the effect that it secured a contract of considerable magnitude for constructing a highway within the state of Arizona; that it moved a large portion of its equipment to this state; that during such construction it maintained within the state an office for the transaction of business; and that all operations in connection with such construction, involving dozens, if not hundreds, of separate transactions and many thousand dollars, were done in Arizona through such office. During the construction of the highway covered by its contract, it did some other highway work within the state. We have then a corporation organized for the purpose of transacting a certain class of business in various places, devoting most of its efforts for a considerable time to doing business of that nature within the state of Arizona. If this be not the transaction of business within the state, we are unable to see where anything done by that kind of a foreign corporation would be such. Counsel have cited to us many cases determining what, under different circumstances, was or was not the transaction of business within a state in violation of statutes similar to ours, and we have made some independent research on the same subject. We have been unable to find a single case where acts going to the extent of those performed by plaintiff in this state have been held not to amount to the doing of business, and in the vast majority of cases which fall within such statutes, the foreign corporation had done far less than did plaintiff in this case. We hold, therefore, that plaintiff was, within the meaning of section 658, *supra,* transacting business in the state of Arizona without complying with the requirements of section 657, *supra.* If nothing further appears, plaintiff may not maintain this action, for by the express language of the statute its contract is void.

A void contract is one which never had any legal existence or effect, and it cannot in any manner have life breathed into it. Where the statute, in substance, gives an option to one party or another to declare a contract void, it is frequently held the right may be waived in one manner or another because the contract in reality is not void, but merely voidable, no matter which word is used in the statute. *Eastlick* v. *Hayward Lumber & Invest. Co., supra; Verdigris River Land Co.* v. *Stanfield,* 25 Okl. 265, 105 Pac. 337; *M. S. Cohn Gravel Co.* v. *Southern Surety Co.,* 129 Okl. 171, 264 Pac. 206. But under a statute such as ours, there is no room for construction. The legislature has repeatedly and solemnly declared that any and all the acts of the corporation are "void," without qualification or exception of any nature. Under such circumstances, no action that anyone could take could give the contract validity. *Eastlick* v. *Hayward Lumber & Invest. Co., supra.* Unless, therefore, plaintiff can show that for some reason the statute does not apply to contracts made under the circumstances of the one involved in the present case, its suit must fall. Apparently it recognizes this, for it states some nine reasons under which it contends that even though it was transacting business in Arizona at the time the Scott contract was entered into, it is not barred from maintaining this action.

We will consider these contentions in their order. The first is that sections 657 and 658, *supra,* have no application to a foreign corporation performing work under a contract with the state of Arizona. Were this an action on the original contract between plaintiff and the state, the question might be worthy of serious consideration. But the contract sued on is one between plaintiff on the one hand and Scott and

the company on the other in which the state has no conceivable or possible interest, nor would it be a proper party to an action thereon. We think the first exception is untenable.

The second is that sections 657 and 658, *supra,* have no application to a foreign corporation contracting with the state while the latter is acting as an instrumentality of the United States government. The same objection applies to this contention as to the first, and, in addition thereto, the state is not an instrumentality of the United States government when it constructs the so-called Federal Aid Highways. The only appearance of the federal government in the picture is through a gift which it makes to the state, if, as, and after the latter constructs highways in accordance with certain rules laid down by that government. The state may at any time decline to accede to these rules, and the only effect, so far as the federal government is concerned, is that the state will not receive the gift.

The third is that the contract involved the improvement of a Federal Aid Highway, and that it therefore involves interstate commerce. While the powers and rights of the federal government in that field have developed enormously during the last generation, we have yet to learn that the building of a state highway through state action legally affects interstate commerce.

The fourth is that it is against the public policy of the state to apply the statute to corporations building a highway for which the state may receive federal aid. What we have said in regard to the previous contentions disposes of this.

All of these contentions are based, in substance, upon the fallacious theory that the state of Arizona and the federal government are in some manner

legally interested in a private contract between plaintiff and defendants. This being untrue, the entire argument on these points necessarily falls.

The remaining contentions of plaintiff upon this point are in substance determined by the answer to the question of whether or not any or all of the parties to a void contract may waive its illegality and allow the court to proceed to enforce it. It is, of course, true that where a contract is not illegal on its face, and the facts which make it illegal do not appear in the pleadings or the evidence, the court will enforce the contract. *Cox* v. *Cameron Lumber Co.*, 39 Wash. 562, 82 Pac. 116; *Northwestern Salt Co.* v. *Electrolytic Alkali Co.*, (1914) A. C. 461; *Blair Horse & Mule Co.* v. *Hatfield,* 175 Mo. App. 296, 162 S. W. 319. But it is practically universally held that a party to an illegal contract cannot, either at the time of the execution of the contract or afterwards, waive his right to set up the defense of illegality in any action thereon by the other party. As was said in *Hall* v. *Coppell,* 7 Wall. (74 U. S.) 542, 558, 19 L. Ed. 244:

" . . . In such cases there can be no waiver. The defense is allowed, not for the sake of the defendant, but of the law itself. The principle is indispensable to the purity of its administration. It will not enforce what it has forbidden and denounced. The maxim, *ex dolo malo non oritur actio,* is limited by no such qualification. The proposition to the contrary strikes us as hardly worthy of serious refutation. Whenever the illegality appears, whether the evidence comes from one side or the other, the disclosure is fatal to the case. No consent of the defendant can neutralize its effect. A stipulation in the most solemn form to waive the objection, would be tainted with the vice of the original contract, and void for the same reasons. Wherever the contamination reaches, it destroys. The principle to be extracted from all the cases is, that the law will not

lend its support to a claim founded upon its violation. *Morck* v. *Abel*, 3 Bosanquet & Puller, 35; *Armstrong* v. *Toler*, 11 Wheat. 258 [6 L. Ed. 468]; *Collins* v. *Blantern*, 1 Smith's Leading Cases, 630, and notes."

See, also, *Berka* v. *Woodward*, 125 Cal. 119, 57 Pac. 777, 73 Am. St. Rep. 31, 45 L. R. A. 420; *Embrey* v. *Jemison*, 131 U. S. 336, 9 Sup. Ct. 776, 33 L. Ed. 172; *Oscanyan* v. *Winchester Repeating Arms Co.*, 103 U. S. 261, 26 L. Ed. 539. Nor can a contract against public policy be made valid even by ratification. *United States* v. *Grossmayer*, 9 Wall. 72, 19 L. Ed. 627; *Ladd* v. *Rogers*, 11 Allen (Mass.) 209. The only exception to the general rule is that an account or contract which has been declared voidable only, for the protection or benefit of a certain party or class of parties, may be ratified unless such ratification is in contravention of public policy. *Norbeck etc. Co.* v. *State*, 32 S. D. 189, 142 N. W. 847, Ann. Cas. 1916A 229. Were this contract one of the class which is voidable merely at the option of one of the parties, the defense of illegality could, of course, be waived. *Eastlick* v. *Hayward Lumber & Invest. Co.*, *supra*. But as we have pointed out, such is not the situation. Whatever the motive which induced the legislature to pass the section in question, it has made it applicable to all cases without exception. It has not merely, as in the case of the statutes of limitations, taken away the remedy but has denied the right. It has declared the contract void *ab initio*. This can be considered nothing but an expression of public policy upon the part of the state, and neither the court nor any litigant has the right to waive the provisions of the act. It is the duty of the court, whenever the facts which render the contract void are called to its attention, to declare the law, and no party may recover in an action where the right of

recovery must rest in some manner upon the void contract. It is contended that because Scott, the principal on the bond, has not legally raised the issue, the surety is not permitted to do so. We have been cited to no case, and we are satisfied that none can be found, holding that when a contract which is void *ab initio* as a matter of public policy, is declared on, that any party whom it is sought to bind under the contract is barred from raising the objection. It has been repeatedly held that statutes of this nature are constitutional, and when such is the case, the courts have no option but to enforce the law as it is written. We have realized the harshness of the law and the fact that in individual cases its application may work grievous injustice, and wherever there was a doubt as to its applicability, have resolved that doubt in favor of the validity of the contract objected to, but where the facts show, beyond a doubt, that the contract falls within the statute, the question of abstract justice or the effect of the law is not for us. The legislature has acted within its constitutional authority, and the facts are clear. It appearing from the record that the contract on which plaintiff seeks to recover was by the public policy of this state declared to be void, no recovery can be had thereon as against any person. It is useless for us to consider any of the other questions raised on this appeal.

The judgment of the superior court of Maricopa county is reversed and the case remanded, with instructions to enter judgment in favor of the defendant.

ROSS, C. J., and McALISTER, J., concur.