FERGUSON, Justice
(dissenting).
Appellant, Association of Golden Glades Condominium Club, Inc. (Association), appeals from a final judgment in favor of appellee, Golden Glades Club Recreation Corp. (Golden Glades), which holds that a cost of living adjustment to rents put into effect on January 1, 1975 is valid and enforceable, and which awards appellee the increased rents for the entire five-year period from January 1,1975 through December 31, 1979. This judgment was rendered after remand from our earlier opinion in Golden Glades Club Recreation Corp. v. Association of Golden Glades Condominium Club, Inc., 385 So.2d 103 (Fla. 3d DCA), rev. denied, 392 So.2d 1374 (Fla.1980). In that opinion we partially reversed a summary *155 final judgment entered in favor of the Association and remanded with instructions to consider further evidence on the question of whether the judgment, which dismissed Golden Glades’ claim for all unpaid rent, was overbroad.
The question presented this time is whether Section 711.231, Florida Statutes (1975)[1] — which renders unenforceable[2] rent escalation clauses in condominium leases, and which applies to those leases which incorporate by reference subsequent amendments to the Condominium Act, Chapter 711 — impacts leases which pre-date the statute so as to preclude collection of those escalated rents which become due subsequent to the effective date of the statute. The majority says no. I disagree. My view is strengthened by Angora Enterprises, Inc. v. Cole, 439 So.2d 832 (Fla.1983), the most recent supreme court decision in this area, which will be discussed later. I would note at the outset that Fleeman v. Case, 342 So.2d 815 (Fla.1976), relied upon by the majority, is not controlling because that case, unlike this one, did not involve a lease agreement which incorporated by reference amendments to the Condominium Act. See Angora Enterprises, Inc. v. Cole, 439 So.2d at 834.
In March, 1970, Golden Glades and the Association entered into a written lease which contained an escalation clause providing for adjustments to rental payments, based upon a cost of living index, at five-year intervals, commencing January 1,1975, and continuing each five years thereafter throughout the term of the ninety-nine year lease. The first rental increase was put into effect on January 1, 1975. Section 711.231, Florida Statutes (1975) became effective on June 5, 1975.
Appellant contends that the effect of incorporating Section 711.231 by reference into the long-term lease[3] was to render the escalation clause unenforceable as to amounts due subsequent to June 5, 1975, the effective date of the statute. Appellant concedes that appellee is entitled to the escalated amount from January 1, 1975 to *156 June 5, 1975. In response, appellee contends that because the first five-year period rent increase went into effect on January 1, 1975, which was prior to the statute’s effective date of June 5, 1975, its right to the increased rents for the entire period from January 1,1975 through December 31, 1979 became vested. Appellee argues that Kaufman v. Shere, 347 So.2d 627 (Fla. 3d DCA 1977), cert. denied, 355 So.2d 517 (Fla.1978) is controlling here.
In Kaufman this court held that a trial judge was correct (1) in refusing to invalidate a rent increase of May 21, 1974, which occurred before the effective date of the statute, and (2) in prohibiting further rent increases after the effective date of the statute. We were not called upon in Kaufman, and did not answer the question now presented, i.e., whether the increase of January 1, 1975 could be enforced past June 5, 1975, the effective date of the anti-escalation amendment.[4]
Addressing appellee’s contention that all escalated amounts of rent for the period from January 1, 1975 to December 31, 1979 became vested on January 1, 1975, I agree with appellant’s response that obligations flowing from a lease which are to become due at some future date are not vested but are merely contingent. De Vore v. Lee, 158 Fla. 608, 610-611, 30 So.2d 924, 926 (Fla.1947). The court in De Vore noted that:
[T]he undertaking to pay rent periodically ripens into a debt only as the times for payments of rent arrive, [cites omitted]. In other words, the debt becomes fixed from time to time as the amount of rental is earned by the use of the property by the lessee. An obligation for the full amount that the lessor would eventually receive from the lessee for the occupancy of the property for the entire time mentioned in the lease would not be established merely upon the execution of the instrument, for “rent does not accrue to the lessor as a debt or claim, unless payable in advance, until the lessee has enjoyed the use of the premises.... ” Id. at 611, 30 So.2d at 926.
Since the rent increase payments from January 1, 1975 through December 31, 1979 were not payable in advance, but accrued and were payable each month, appellee had no “vested” right to receive those payments accruing after June 5, 1975, when, according to Section 711.231, that part of the lease agreement which provided for escalation beginning January 1, 1975 was no longer enforceable.
Angora Enterprises, Inc. v. Cole, the most recent supreme court foray into the quagmire, comes close but still falls short of answering the question. There it was held that since the parties had agreed to be governed by future amendments to the Condominium Act, they therefore agreed to be bound by Section 711.231 which renders the escalation clause unenforceable. Angora thus supports my view because there is a reasonable inference that unenforceable means that the executory part of the escalation agreement would be void even as to a contract which predated Section 711.231. Appellee counters, correctly, that Angora does not expressly state that Section 711.-231 is to be applied to a rent increase which took effect prior to the statute’s effective date. The reasonable inference aside, it cannot be determined from the facts in Angora whether the rent escalation clause, which was rendered unenforceable, took effect prior to June 5,1975. So neither Kaufman nor Angora have laid to rest the precise question.
Because Section 711.231, Florida Statutes (1975) is incorporated by reference as part *157 of the Declaration of Condominium and the lease,[5] the trial court, in my opinion, erred in entering final judgment in favor of ap-pellee Golden Glades for the full amount of rent increase from January 1,1975 through December 31, 1979, and in enforcing the escalation clause of the subject recreation lease subsequent to June 5, 1975, the date Section 711.231 went into effect and became incorporated into the lease agreement. See Angora Enterprises, Inc. v. Cole; see also Century Village, Inc. v. Wellington, E, F, K, L, H, J, M & G, Condominium Association, 361 So.2d 128 (Fla.1978); Coral Isle East Condominium v. Snyder, 395 So.2d 1204 (Fla. 3d DCA), rev. denied, 407 So.2d 1105 (Fla.1981); Golden Glades Club Recreation Corp. v. Association of Golden Glades Condominium, Inc., supra.
The question presented by this appeal is of great public interest and should be certified to the supreme court.

. Rent escalation clauses in condominium leases were declared void under Section 711.236 as created by Chapter 75-61, Laws of Florida [codified as Section 711.231, Florida Statutes (1975)]. Section 718.401(8)(a), Florida Statutes (1981), which is the renumbered version of Section 711.231, provides in part:
It is declared that the public policy of this state prohibits the inclusion or enforcement of escalation clauses in land leases or other leases or agreements for recreational facilities, land, or other commonly used facilities serving residential condominiums, and such clauses are hereby declared void for public policy, [e.s.]

. I think it significant that the legislature used the word “enforcement” (see n. 1) which denotes that even as to a contract which was valid at its inception the agreement could be rendered nonperformable. The word “void”— used in the same sentence — when applied to contracts, commonly means without legal effect ab initio. National Union Indemnity Co. v. Bruce Bros., Inc., 44 Ariz. 454, 38 P.2d 648, 652 (1934). But here it must be given another accepted meaning — that the agreement is without legal force so far as it is executory, see Griffin v. Smith, 101 F.2d 348, 349 (7th Cir.1938), cert. denied, 308 U.S. 561, 60 S.Ct. 73, 84 L.Ed. 471 (1939) in order that the terms harmonize. Section 711.231 could not be applied to void the escalation clause as to the part governing rent increases for the period from January 1, 1975 to June 5, 1975, since that part of the escalation clause had been executed prior to the date the statute became effective. To apply the statute to that executed portion of the contract would amount to an unconstitutional impairment. See Fleeman v. Case, infra. In the case of a contract which is affected' in an unforeseen fashion due to a subsequent occurrence, no issue of unconstitutional impairment is presented where the parties by terms of the same instrument agreed that the contract was subject to that occurrence. See Century Village, Inc. v. Wellington, E, F, K, L, H, J, M & G, Condominium Association, 361 So.2d 128, 133 (Fla.1978).

.Because the Declaration of Condominium states that the provisions of the Condominium Act “as the same may be amended from time to time” are incorporated by reference, and the Declaration makes reference to the long-term lease as being attached to the Declaration and “made a part hereof,” the lease is also subject to the incorporation by reference language. Angora Enterprises, Inc. v. Cole; Souci v. Division of Florida Land Sales and Condominiums, 421 So.2d 623, 629 (Fla. 1st DCA 1982).
The incorporation by reference question was decided in favor of appellant in the earlier opinion of this case, Golden Glades Club Recreation Corp. v. Association of Golden Glades Condominium Club, Inc.

. Because the question of the enforceability of the May 21, 1974 increase past June 5, 1975 was never specifically presented to the Kaufman court, that court’s approval of the trial court’s prohibition against further rent increases subsequent to the effective date of the statute need not necessarily be interpreted as applying only to the next five-year interval of increase, thereby permitting the lessor to collect all the monthly escalation payments for the initial five-year period beginning in May, 1974. Apparently, this was the interpretation made by the trial court when, in entering an order on August 18, 1978 after the conclusion of the interlocutory appeal, it awarded the lessor the escalation sums for the entire period from June 1, 1975 through April, 1978, along with interest.

. See supra note 3.