**Ronald J. CLARK, Plaintiff,**

v.

**AIRAVADA CORPORATION, Defendant.**

**No. CV–S–96–780–PMP (LRL).**

United States District Court,
D. Nevada.

July 14, 1998.

Leland E. Lutfy, Las Vegas, NV, for Plaintiff.

Marguerite A. Kirk, Lenkowsky & Ezzell, Bullhead City, AZ, for Defendant.

*ORDER*

PRO, District Judge.

Presently before the Court is Defendant Airavada Corporation's ("Airavada") Motion for Summary Judgment (# 40) filed on February 27, 1998. Plaintiff Ronald Clark ("Clark") filed an Opposition (# 54) on April 27, 1998. On May 11, 1998, Airavada filed a Reply (# 57).

**I. Summary Judgment Standard**

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1050 (9th Cir.1995). After drawing inferences favorable to the respondent, summary judgment will be granted only if all reasonable inferences defeat the

respondent's claims. *S.E.C. v. Seaboard Corp.*, 677 F.2d 1297, 1298 (9th Cir.1982).

A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir.1982). The substantive law defines which facts are material. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue of material fact is more than some "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Only disputes over outcome determinative facts under the applicable substantive law will preclude the entry of summary judgment. *Id.* If the factual context makes the respondent's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *Metro Indus., Inc. v. Sammi Corp.*, 82 F.3d 839, 847 (9th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 181, 136 L.Ed.2d 120 (1996). Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Liberty Lobby*, 477 U.S. at 250, 106 S.Ct. 2505. In meeting this burden, parties seeking to defeat summary judgment cannot stand on their pleadings once the movant has submitted affidavits or other similar materials. Affidavits that do not affirmatively demonstrate personal knowledge are insufficient. *Keenan v. Allan*, 91 F.3d 1275, 1278 (9th Cir.1996).

The Supreme Court cases cited above establish that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' "

*Celotex Corp.,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## II. Factual Background

Clark personally loaned Duane LaFleur $21,500, and LaFleur pledged his stock in Airavada as security for the loan. Later, Clark foreclosed on and obtained the shares of Airavada stock by a $5,000 credit bid at a public auction. Clark now seeks to have Airavada reissue the shares in his name. Airavada refuses, arguing that Clark is not a purchaser for value and is subject to a restriction on transfer, or alternatively, that Clark is not a secured creditor.

Airavada incorporated on May 5, 1993 as an aircraft service company. The stock subscription list for Airavada included LaFluer, Richard Auld, and Triple T Holdings. All issued stock had one dollar per share par value. LaFluer purchased forty shares of stock for thirty dollars. Richard Auld purchased forty shares for forty dollars. Triple T Holdings purchased thirty shares for thirty thousand dollars. The stock certificates noted that the stock was restricted and referred interested parties to the Articles of Incorporation for details.

LaFluer and Richard Auld signed the Articles of Incorporation on April 22, 1993. Article Seven of the Articles of Incorporation was a stock restriction. It provided that if a shareholder wanted to sell his or her stock, the shareholder first had to offer the other shareholders and the company the opportunity to purchase the stock, unless an effective shareholder agreement provided to the contrary. If parties entered into an effective shareholder agreement, it would prevail. The provision outlined specific procedures that the shareholder wishing to sell had to follow.

Also on April 22, 1993, Lafleur, Auld, and Triple T Holdings signed a Stock Purchase Agreement ("the Agreement") that became effective on the filing of the Articles of Incorporation. The Agreement also contained a provision where the shareholders agreed to sell their stock to the other shareholders if the shareholder wanted to sell his or her stock. Paragraph Seven of the Agreement provided that LaFluer would not receive any salary until Airavada completed payment on its initial equipment purchase. Thereafter, LaFluer's compensation was to be in the form of dividends. Paragraph Eight of the Agreement stated that "the provision of services by LaFluer ..., as set forth in No. 7 above, represents full payment for the initial shares of stock issued to [him]."

After Airavada incorporated, LaFluer worked for the company for four to six months. At the same time, LaFluer was working for Viscount Air Tours. LaFluer's compensation from Viscount Air Tours was a percentage of its profits. At this time, Clark was the major shareholder of Viscount Air Tours. LaFluer began to borrow money from Clark in November 1993. By December 1994, Clark had lent LaFleur $21,500.

On December 27, 1994, LaFluer signed a promissory note and security agreement for the $21,500 debt. He used his stock in Airavada as collateral. When he signed the promissory note and security agreement, he did not have the Airavada stock in his possession. Instead, he gave Clark a copy of the stock certificate and Airavada's Articles of Incorporation. LaFluer informed Clark that he would need to consult with the other Airavada shareholders before he could obtain possession of the original stock certificate.

After he signed the security agreement, LaFluer had a meeting with the apparent shareholders including Dennis Masse, Karen Calvert, Brian Tupper, and Elmer Tupper.[1] He informed the apparent shareholders that he needed his original stock certificate because he had pledged the stock as collateral on a loan. On March 9, 1995, those present at the meeting, along with Darcy Tupper, signed a document releasing the stock certificate to LaFluer. The document stated, "We hereby authorize Gurtler & Kelley to release to Duane LaFleur his original 40 shares of stock in Airavada." Charles Gurtler, Jr.,

---

1. According to Airavada's counsel, Charles Gurtler, Jr., LaFluer held Auld's shares as a stock transfer agent. Auld ceased being involved with Airavada. Also, Dennis Masse and Karen Calvert were not original shareholders in Airavada. At the time of this meeting, Airavada was reorganizing. Masse and Calvert were Airavada employees that the corporation was considering making shareholders.

Airavada's attorney, stated that he perceived the document as a release of physical possession, not a release of any stock restrictions.

Clark continued to loan money to LaFleur after he received the original stock certificate. On March 16, 1995, Edward Coleman, Clark's attorney, called Gurtler to inquire about LaFleur's use of the stock as collateral. According to Coleman, he asked if the stock was available for collateral, if it was validly issued, and if it was validly outstanding under Arizona law. Gurtler answered yes to each question. Gurtler states that he informed Coleman that the stock was restricted by a Stock Transfer Agreement and the Articles of Incorporation.

After the above events, LaFleur defaulted on the promissory note. Clark sent notice of the public sale to Airavada. On August 13, 1996, Clark obtained the Airavada stock through a credit bid of $5,000. After obtaining the stock, Clark learned that Airavada had canceled the stock certificate and considered the stock to be valueless.

## III. Discussion

Airavada makes three arguments as to why it should not have to reissue LaFleur's stock in Clark's name. First, it argues that Clark is not a protected purchaser pursuant to Ariz.Rev.Stat. Ann. § 47–8303 (West 1998),[2] and he takes LaFleur's stock subject to Airavada's adverse claim. Second, it argues that LaFleur's stock was subject to a transfer restriction, and Clark is bound by that restriction. Third, it argues that even if Clark is a protected purchaser and is not bound by the transfer restriction, he failed to perfect his security interest pursuant to Ariz. Rev.Stat. Ann. § 47–9203 (West 1998). Clark responds that he is a protected purchaser, that he complied with the transfer restriction, and that he perfected his security interest. Clark also argues that Airavada is equitably estopped from arguing that LaFleur's stock was subject to an employment condition. The Court does not reach Clark's equitable estoppel argument because it determines the employment condition issue on other grounds.

2. The Arizona version of the Uniform Commercial Code is found in Ariz.Rev.Stat. §§ 1101—

Airavada maintains that Arizona law governs this dispute. Clark does not dispute this claim, and the Court agrees that Arizona law governs the issues.

## A. Protected Purchaser Status

■ A purchaser of stock "acquires all rights in the security that the transferor had to offer." Ariz.Rev.Stat. Ann. § 47–8302 (West 1998). " 'Purchaser' means a person who takes by purchase." Ariz.Rev.Stat. Ann. § 47–1201(33) (West 1998). A purchase is "any voluntary transaction creating an interest in property." Ariz.Rev.Stat. Ann. § 47–1201(32) (West 1998). A protected purchaser takes stock free of any adverse claim. Ariz. Rev.Stat. Ann. § 47–8303(B) (West 1998). To qualify as a protected purchaser, the purchaser must give value, must not have notice of any adverse claim, and must obtain control of the security. Ariz.Rev.Stat. Ann. § 47–8303(A) (West 1998).

The parties agree that Clark is a purchaser. Before deciding if a purchaser qualifies as an protected purchaser, the Court must determine if an adverse claim exists. If here is no adverse claim, then the question of protected purchaser status is moot. Under Arizona law, an adverse claim exists if "a claimant has a property interest in a financial asset and ... it is a violation of the rights of the claimant for another person to hold, transfer, or deal with the financial asset." Ariz.Rev.Stat. Ann. § 47–8102(A)(1) (West 1998).

Airavada claims that it has a property interest in LaFleur's shares because it owns LaFleur's shares. Airavada offers three different arguments as to why it owns LaFleur's shares. Each argument is based on the meaning of the Stock Purchase Agreement. In the Agreement, LaFleur agreed to work for Airavada without compensation until Airavada completed payment on its initial equipment purchase. The next paragraph of the Agreement stated that LaFleur's agreement to work without compensation represented full payment for his initial shares of Airavada stock.

11107 (West 1998).

■ Airavada's first argument appears to be that the employment condition was a condition precedent to LaFleur owning the shares. Since LaFleur did not complete the employment condition, Airavada argues that it owns the stock. Clark disputes whether the employment provision was a condition precedent. He contends that the provision simply related how much LaFleur would be paid if the worked for Airavada. The provision in the Agreement is not just a statement concerning payment because the next paragraph states that the work is consideration for the shares. However, completing the work was not a condition precedent to ownership. Nothing in the Agreement stated that LaFleur would not own the shares until he completed employment. Also, LaFleur subscribed to the shares and Airavada issued the shares to LaFleur before LaFleur even began employment. A subscriber of shares becomes an owner once a subscription is accepted by a corporation. William Meade Fletcher, *Flectcher Cyclopedia of the Law of Private Corporations,* § 5094 (Rev.Vol.1995). Therefore, LaFleur's employment could not have been a condition precedent to his ownership of the shares.

■ Airavada's second argument is that the Stock Purchase Agreement provided that the consideration for LaFleur's shares was his employment until Airavada paid off the equipment. Since LaFleur did not complete the employment, the shares were not fully paid for as required by Arizona law.[3] Ariz. Rev.Stat. § 10–019(A) (repealed 1996). However, the Agreement stated that the consideration for the shares was LaFleur's agreement to work in the future. LaFleur gave that promise, so the shares were fully paid.

■ Airavada's third argument is that the consideration for LaFleur's shares was his future services. Airavada argues that since an agreement to provide future services is

not valid consideration under Arizona law, the shares are void. The provision in the Agreement clearly provided that LaFleur agreed to work in the future as consideration for the shares. However, it is not clear that the stock is therefore void.

Two provisions in Arizona law state that stock cannot be purchased for future services. The Arizona Constitution states the following:

> No corporation shall issue stock, except to bona fide subscribers therefor or their assignees; nor shall any corporation issue any bond, or other obligation, for the payment of money, except for money or property received or for labor done. The stock of corporations shall not be increased, except in pursuance of a general law, nor shall any law authorize the increase of stock of any corporation without the consent of the person or persons holding the larger amount in value of the stock of such corporation, nor without due notice of the proposed increase having been given as may be prescribed by law. All fictitious increase of stock or indebtedness shall be void.

Ariz. Const. Art. XIV, § 6. In addition, the statute governing the payment of shares in effect when Airavada incorporated provided that future services could not constitute payment for shares. Ariz.Rev.Stat. § 10–019(B) (repealed 1996).[4] If the stock issued in violation of the above provisions is void, then it never had any legal existence. *Hirschfeld v. McKinley,* 78 F.2d 124, 132 (9th Cir.1935) (quoting *National Union Indem. Co. v. Bruce Bros., Inc.,* 44 Ariz. 454, 38 P.2d 648, 652 (1934)). However, if the stock is voidable, then the shareholders can ratify the voidable stock, thus giving it legal existence. *See Frasier v. Trans–Western Land Corp.,* 210 Neb. 681, 316 N.W.2d 612, 618 (1982).

---

**3.** The validity of Airavada's stock is governed by the law in effect when Airavada was incorporated. *See Wilco Aviation v. Garfield,* 123 Ariz. 360, 599 P.2d 813, 815 (Ct.App.1979) (stating that statutes are generally not retroactive unless the Legislature declares otherwise); *see also Hanks v. Borelli,* 2 Ariz.App. 589, 411 P.2d 27, 30 (Ct. App.1966) (noting that a corporation is subject to the law in effect when the corporation is granted existence). Ariz.Rev.Stat. § 10–19 (repealed

1996) governed the payment for shares when Airavada was incorporation. The current law also provides that shares are fully paid when the corporation receives the authorized consideration. Ariz.Rev.Stat. Ann. § 10–621 (West 1996).

**4.** Ariz.Rev.Stat. § 10–621(B) also provides that an agreement for future services is not valid consideration. Ariz.Rev.Stat. § 10–621(B).

The Constitutional provision prohibiting payment for shares with future services is similar to provisions in other states' constitutions that were enacted to prevent the problem of watered stock.[5] Fletcher, *supra*, § 5207. Watered stock is stock issued for less than par value or for no consideration at all. *Id.* at § 5199. In stock with par value, par value represents the minimum price for issued stock and is the permanent capital (or stated capital) of a corporation. *Id.* at § 5080.40. States enacted provisions prohibiting watered stock because investors and creditors used to rely on the stated capital funds when evaluating corporations. *Id.* at § 5207. The investors and shareholders were at risk if the stated capital did not contain the stated amount or if all it contained was invalid consideration like a promise for future services.

Courts have strictly construed the section of the Arizona Constitution prohibiting payment for shares with future services, finding that violations of the provision make the stock void. *Hirschfeld*, 78 F.2d at 131; *Overlock v. Jerome–Portland Copper Mining Co.*, 29 Ariz. 560, 243 P. 400, 401 (1926). The Arizona Supreme Court found that the provision stated a public policy to prevent stock from being issued to parties who had not paid for it and to protect creditors of the corporation. *Overlock*, 243 P. at 401. The *Hirschfeld* court agreed with the public policy concerns and found that the fact that the language of provision said that fictitious increases of stock were void supported its decision that the stock was void. *Hirschfeld*, 78 F.2d at 131–32 (quoting *National Union Indem. Co v. Bruce Bros., Inc.*, 44 Ariz. 454, 38 P.2d 648, 652–54 (1934)).

When Airavada issued LaFleur's stock, Arizona still retained the concept of par value. The Arizona statute governing consideration for shares provided that shares with a par value had to be issued for at least the par value. Ariz.Rev.Stat. § 10–018(A) (repealed 1996). The par value amount constituted stated capital, while any additional amount paid over par value went into a capital surplus account. Ariz.Rev.Stat. § 10–021(A)

(repealed 1996).[6] LaFleur's shares in Airavada had a par value of one dollar per share. In addition to his agreement to provide future services, LaFleur paid Airavada the par value of his shares in cash.

Since LaFleur paid for the par value of his shares in cash, the Arizona Constitutional provision does not apply to this case because there is no watered stock. The stated capital of Airavada contained valid consideration. However, Arizona law stated that future services could not be used for even part payment for the issuance of shares. Ariz.Rev.Stat. § 10–019(B) (repealed 1996). No Arizona case has decided if stock that is not watered stock, but was issued for invalid consideration is void or only voidable. In the absence of controlling forum state law, a federal court sitting in diversity must use its own best judgment in predicting how the state's highest court would decide the substantive issue. *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir.1986), *reh'g denied, modified*, 810 F.2d 1517 (1987); *Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314, 316 (9th Cir.1980).

The Arizona statute stating that future services cannot be used to pay for stock is different from the constitutional provision in that it does not state that the stock is void if issued for invalid consideration. Ariz.Rev.Stat. § 10–019 (repealed 1996). Statutes that do not state that stock issued in violation of a prohibition is void, are generally considered voidable. 18 C.J.S. *Corporations* § 170(c) (1990). When interpreting the Arizona Constitution, the *Hirschfeld* court partially based its decision that watered stock was void on the fact that the constitutional provision explicitly states that all fictitious increases of stock are void. Thus, *Hirschfeld v. McKinley* supports a finding that the Arizona statute only makes the stock voidable.

In addition, the policy concerns supports a conclusion that the stock is voidable. The need to protect investors and creditors from fictitious stated capital is ensured by the constitutional provision. The statute further

---

5. Watered stock is the same thing as stock that has been ficticiously paid up. William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 5199 (rev.vol.1995).

6. The current statute does not retain the par value concept. Ariz.Rev.Stat. Ann. § 10–621 (West 1998).

protects the shareholders from dilution of their shares. *See Rooney v. Paul D. Osborne Desk Co., Inc.*, 38 Mass.App.Ct. 82, 645 N.E.2d 50, 53 (1995). That purpose is met by a voidable statute because stock can be voided unless the shareholders acquiesced to the invalid consideration. Given these reasons, the Arizona Supreme Court would likely find that the statute disallowing future services as consideration only makes stock voidable.

LaFleur's stock was voidable, not void, because he paid valid consideration for the stated capital, but invalid consideration for the remainder. Therefore, the stock is valid if the parties acquiesced to its issuance. All of the stockholders in Airavada signed the agreement authorizing the use of future services as consideration. Airavada cannot now declare the stock void. Therefore, LaFleur owned the stock, and Airavada does not have any property interest in the stock. Consequently, Airavada does not have an adverse claim to the stock that is now is Clark's possession. The lack of an adverse claim means that the Court does not need to further examine the protected purchaser issue. LaFleur owned the shares, and he transferred his entire ownership interest to Clark.

### B. Stock Transfer Restriction

■ A valid transfer restriction is effective against a person who has knowledge of the restriction or has a certificated security with the restriction noted on the security. Ariz. Rev.Stat. Ann. § 47–8204 (West 1998). Transfer of LaFleur's stock was restricted by a right of first refusal in the Articles of Incorporation. Airavada argues that Clark is subject to the right of first refusal. Clark does not dispute that he knew about the right of first refusal, nor that he was bound by the right of first refusal. Instead, Clark maintains that he complied with the restriction.

According to Clark, he complied with the right of first refusal because he notified Airavada of the foreclosure sale concerning LaFleur's stock. However, the right of first refusal in the Articles of Incorporation outlined a specific procedure that a stockholder was to follow. Clark's notice of a foreclosure sale did not comply with those procedures. Therefore, Clark did not comply with the

right of first refusal and is bound by the provision in the Articles of Incorporation. *See Phipps v. CW Leasing, Inc.*, 186 Ariz. 397, 923 P.2d 863, 866 (Ct.App.1996) (noting that buyer with actual or constructive knowledge of a contractual right of first refusal takes property subject to the right of first refusal and may be liable for damages or specific performance).

### C. Security Interest

As an alternative to its protected purchaser and transfer restriction arguments, Airavada contends that it does not have to reissue LaFleur's shares because Clark did not perfect his security interest in the shares. According to Airavada, Clark's security interest was not perfected because LaFleur did not have any rights in the shares. Ariz.Rev.Stat. Ann. § 47–9203 (West 1998). This Court has determined that LaFleur did have rights in the shares, so this argument is moot.

### IV. Conclusion

LaFleur owned his shares in Airavada because he paid cash for the stated capital and the Airavada shareholders acquiesced to the invalid consideration. Therefore, he could transfer ownership to Clark. However, Clark is still subject to the right of first refusal contained in the Articles of Incorporation.

IT IS THEREFORE ORDERED that Defendant Airavada's Motion for Summary Judgment (# 40) is DENIED with respect to the issues of whether Clark qualifies as a protected purchaser and whether Clark perfected his security interest, but is GRANTED with respect to the issue of whether Clark is bound by the right of first refusal.