## SALT LAKE AUTOMOBILE CO. v. KEITH-O'BRIEN CO. et al.

### No. 2649.   Decided October 7, 1914 (143 Pac. 1015).

CONSTITUTIONAL LAW—VESTED RIGHTS—OBLIGATION OF CONTRACT—
AMENDING ARTICLES OF INCORPORATION—PREFERRED STOCK. Under
Comp. Laws 1907, Sec. 338, providing that articles of incorpo-
ration may be amended, in any respect conformable to the laws,
by a majority vote of the outstanding stock, and section 335,
providing that the articles may provide that the stock may be
divided into kinds and classes, and define the rights and privi-
leges of each, such majority may amend the articles to author-
ize an issue of preferred stock, which shall take precedence in
rights over prior issued preferred stock, and division of the
whole stock into classes with such preferential rights; no vested
right being invaded, or obligation of contract impaired.

Appeal from District Court, Third District, *Hon. M. L.
Ritchie,* Judge.

Action by the Salt Lake Automobile Company against the
Keith-O'Brien Company and others.

Judgment for defendants.   Plaintiff appeals.

AFFIRMED.

*Young, Snow, Ashton & Young* for appellant.

*Dickson, Ellis, Ellis & Schulder* for respondents.

FRICK, J.

The Salt Lake Automobile Company, hereinafter called ap-
pellant, having alleged its own corporate existence, the corpor-
ate existence of Keith-O'Brien Company, hereinafter styled
company, and that the individual defendants · constitute the
board of directors of said company, it in substance is made
to appear from the complaint and the exhibits, made a part
thereof:   That said company was originally incorporated
with a capital of $250,000, divided into 2,500 shares, of $100
each.   That thereafter, on the 26th day of January, 1910, the
original articles of incorporation of said company were duly

amended, so as to increase the capital stock from $250,000 to
$500,000, which capital was divided into 5,000 shares of $100
each, classified as follows: 2,500 shares were issued as com-
mon stock, and 2,500 were issued as preferred stock. That
the appellant, for a valuable consideration, purchased fifty-
five shares of said preferred stock, for which certificates were
duly issued to it by said company. That said preferred stock
issued to appellant, as appears from the certificates, is enti-
tled to 6 per cent. cumulative dividends, to be paid out of
the net earnings or profits of said company before any divi-
dends are declared or paid upon the common stock, and that
said preferred stock, as shown by said certificates, "is not
entitled to any representation at any meeting of the stock-
holders, either general or special, but only the shares of the
common capital stock shall be entitled to representation and
to be voted at any such meeting." That thereafter, at a
special stockholders' meeting, duly held on the 26th day of
August, 1913, the articles of said company were again
amended, so as to increase its capital stock from $500,000 to
$950,000, divided into 9,500 shares, of $100 each. That said
9,500 shares were divided into three classes, as follows: 4,500
shares as class A preferred stock, 2,500 shares as class B pre-
ferred stock, 2,500 shares as common stock. That class A
stock is entitled to eight per cent. cumulative dividends, pay-
able semi-annually, from the surplus or net earnings of the
company, to be paid in preference to any other dividends.
That after all the dividends due on class A stock are paid,
class B stock is entitled to six per cent. cumulative dividends
out of the surplus or net earnings of the company over and
above said eight per cent., also payable semi-annually. That
all of the dividends accumulated on such class B stock must
be paid before any dividends can be paid on common stock.
That neither said class A nor said class B stock is entitled
to representation or to be voted at any stockholders' meet-
ing, general or special. That at the time the said meeting
on August 26, 1913, was held as aforesaid there was issued
and outstanding common stock entitled to vote 1,802½
shares, of which number.1,630½ shares were represented at
said meeting and voted for the amendment to increase said

capital stock to 9,500 shares, and to divide the same into
said class A and class B preferred and into said common
stock, and that the remaining 172 shares were not repre-
sented at said meeting and did not vote either for or against
said amendment. That on the day preceding the 26th day of
August, 1913, appellant served a written notice, addressed to
the officers and stockholders of said company, protesting
against holding said special meeting and against adopting
the amendment to said articles of incorporation as aforesaid.
That notwithstanding said protest said meeting was held and
said amendment was adopted by the vote aforesaid, and the
officers of said company have duly caused said amendment
to be filed with the Secretary of State as required by law,
and have prepared the stock certificates for said class A,
class B, and said common stock, and will issue and sell said
class A stock, and so much of said class B stock as remains
unsold, unless restrained by the court, to the irreparable
damage of appellants. Appellant therefore prays for an
injunction restraining said company and said officers from
disposing of the class A stock aforesaid.

There are some further allegations respecting the legality
of said preferred stock, which it is not necessary to set forth
here, since the regularity of the proceedings leading up to
the issuance of the same is not challenged. Nor is the good
faith of said company or any of its stockholders or officers
assailed. Nor is it contended that said company did not
have the right to increase its capital stock; but the alleged
illegality of the proceedings and the invalidity of said stock
are based entirely upon the claim that under the statutes
of this state, to which we shall refer later, no authority
existed in said stockholders' meeting held August 26, 1913,
to authorize the issuance of said preferred stock, unless
consented to by all the stockholders of said company, in-
cluding those who held preferred stock. The company and
the individual respondents appeared in the action, and filed
a general demurrer to the complaint, which, upon a hear-
ing, was sustained, and the appellant declining to plead
further and electing to stand on its complaint the court en-

tered judgment dismissing the action, from which this appeal
is prosecuted.

The only question to be solved by us is whether, under our
Constitution and statutes, a majority of the stockholders of
a corporation may amend the articles of incorporation to
authorize an issue of preferred stock, which shall take prece-
dence in rights over prior issued preferred stock, and to
divide the whole stock into classes, with such preferential
rights. The Constitution of this state (article 12, section 1)
reads as follows:

"Corporations may be formed under general laws, but
shall not be created by special acts. All laws relating to
corporations may be altered, amended or repealed by the
Legislature, and all corporations doing business in this state
may, as to such business, be regulated, limited or restrained
by law."

The law in force at the time the company was organized,
respecting the authority to amend the articles of incorpora-
tion and which is now in force, is found in Comp. Laws
1907, section 338, which, so far as material here, reads as
follows:

"The articles of incorporation of any corporation now
existing or that hereafter may be organized under the laws
of this state may be amended in any respect conformable
to the laws of this state by a vote representing at least a
majority in amount of the outstanding capital stock thereof
at a stockholders' meeting called for that purpose, as pre-
scribed in section 339; *  *  * provided further that the
original purpose of the corporation shall not be altered or
changed without the approval and consent of all the out-
standing stock; provided further, that the adding to the
purposes or object, or extending the power and business
of the corporation, shall not be deemed a change of the orig-
inal purpose of the corporation; *  *  * and, provided
further, that the personal or individual liability of the
holder of full paid capital stock for assessments or for the
indebtedness or obligation of the corporation shall not be
changed without the consent of all the stockholders."

The law conferring authority upon corporations to classify their capital stock, which was in force when the amendment in question was adopted, is found in Laws Utah 1913, p. 52, and reads as follows:

"The articles of incorporation may provide that the capital stock shall be divided into different kinds and classes, and define the rights and privileges that each kind and class of stock shall possess, and the power to vote may be confined by the articles to such kinds and classes of stock as may be designated therein. When not otherwise provided in the articles, at all meetings, each shareholder shall be entitled to one vote for each share of stock which he or she may have in his or her own right, or held by him or her in trust for others, *as shown by the books of the corporation,* and such votes may be given in person, or by an authorized agent, or by proxy."

The foregoing, with the exception of the eight italicized words, namely, "as shown by the books of the corporation," is found in Comp. Laws 1907 as section 335, and was in force when the company was organized, and with the exception of the eight words aforesaid has been in force ever since. It would seem, therefore, that not only is the Legislature by the Constitution authorized to amend all laws relating to corporations within the limits pointed out by this court in *Garey* v. *St. Joe Mining Co.,* 32 Utah 497; 91 Pac. 369; 12 L. R. A. (N. S.) 554, but the right to amend the articles of incorporation by the majority of the stockholders, with the exceptions stated in section 338, *supra,* is expressly given. That section is as much a part of the articles of incorporation as though it were specially referred to or set forth at large therein.

While counsel for appellant do not question the foregoing statement of the law, yet they contend that it has no application to the question before us, for the reason that the issuance of the preferred stock in question falls within one of the exceptions referred to in the *Garey* case, *supra,* in that a fundamental or vested right is invaded, which, they contend, involves the question of the impairment of the obligations of contracts, which is prohibited by our own as well

as by the federal Constitution: Counsel have cited cases
in which it is held that although a corporation has power
to classify its capital stock and to issue preferred stock at
the time of its organization, yet, if a corporation issues only
common stock when organized, it may not, unless the right
to do so is reserved in the articles or is expressly given by
some statute, thereafter issue preferred stock which has pref-
erential rights over other preferred stock without the con-
sent of all the stockholders.   We do not question the sound-
ness of those cases when limited to the circumstances on which
they are based; but, in our judgment, they have no applica-
tion under our statute.   To that effect are practically all the
authorities.   In 3 Clark & Marshall, Private Corporations,
section 630, the law is stated thus:

> "A majority of the stockholders of a corporation clearly have
> the power to make any alterations or changes in the constitution
> of the corporation which are authorized by its charter, for this
> power is within the contract between the corporation and its stock-
> holders.   Thus the majority, where authority is conferred upon the
> corporation by its charter, may bind the minority by a vote to in-
> crease or reduce the capital stock, or to issue preferred stock, or to
> consolidate with another corporation.   *   *   *   In some states there
> are general laws authorizing corporations to alter or amend their
> articles or charter, subject to prescribed limitations, and such laws
> are binding, of course, upon all persons who become stockholders
> of corporations while they are in force."

To the same effect is 1 Cook on Corporations (6th Ed.),
section 268.   As pointed out before, the statute is a part of
every corporate charter.

A similar, if not the precise, question involved in the case
at bar, among others, is thoroughly discussed and the au-
thorities upon the subject, including those cited by appel-
lant's counsel, are reviewed, and in some instances distin-
guished, in the case of *Hinckley* v. *Schwarzschild & Sulz-
berger Co.,* 107 App. Div. 470; 95 N. Y. Supp. 357.   The
decision in that case is clearly reflected in the headnotes,
which are as follows:

> "Legislative acts regulating the internal management of a cor-
> poration, so far as it has reference to the public and concerns the

policy of the state, are within the reserved power to alter and repeal the charter granted to a corporation, though the exercise of the power adds to the burden of the stockholder by increasing his liability, diminishing the value of the stock, or changing the name, offices, or proportion of the management of the corporation. Laws 1901, p. 969, c. 354, authorizing domestic corporations to issue preferred stock by consent of the holders of two-thirds of the capital stock, is within the reserved power of the Legislature to alter the charter of a corporation, and authorizes a corporation to issue preferred stock by consent of the holders of two-thirds of the capital stock, though at the time of the organization of the corporation Laws 1892, p. 1837, c. 688, par. 47, authorizing corporations to issue preferred stock by the unanimous consent of the stockholders, was in force; the statute not interfering with vested rights."

To the same effect are *Hinckley* v. *Schwarzschild & Sulzberger Co.*, 45 Misc. Rep. 176; 91 N. Y. Supp. 893; *C. H. Venner Co.* v. *United States Steel Corp.* (C. C.), 116 Fed. 1012; *Curry* v. *Scott*, 54 Pa. 270; *Wright* v. *Minn. M. L. Ins. Co.*, 193 U. S. 657; 24 Sup. Ct. 549; 48 L. Ed. 832, and *In re Sharood Shoe Corporation* (D. C.), 192 Fed. 945. See, also, note to *Field* v. *Lamson & Goodnow, etc., Co.*, 27 L. R. A. 136. In the case cited from 192 Fed. 945, which is a recent case (1912), the authorities upon this subject are again carefully reviewed, and the court arrived at the conclusion that under statutes like ours the right of a majority to amend the articles so as to issue preferred stock cannot be questioned. In referring to the right to amend by a majority, the Supreme Court of the United States, in the *Wright* case, says:

"Where the right to amend is reserved in the statute or articles of association, it is because the right to make changes which the business may require is recognized, and the exercise of the privilege may be vested in the controlling body of the corporation. In such cases, where there is an exercise of the power in good faith, which does not change the essential character of the business, but authorizes its extension upon a modified plan, both reason and authority support the corporation in the exercise of the right."—Citing cases.

We have already held that, where the right to amend generally is reserved in the articles of incorporation, such reservation constitutes a binding agreement between all of the stockholders to the effect that the articles may be amended

by the number specified therein in any particular which could have originally been agreed upon and inserted in the articles, although such amendment without such an agreement could not have been made under the statute without the consent of all the stockholders. *Nelson* v. *Keith-O'Brien Co.*, 32 Utah 396; 91 Pac. 30. We are also convinced that the right of amendment as set forth in the authorities cited herein is in consonance with reason and justice, and in no way conflicts with or invades the vested rights of any stockholder. While much has been said respecting the relation which a preferred stockholder bears to the corporation and to the holders of common and preferred stock of another class, and that in any event he is only a stockholder and not a creditor, yet it is recognized by practically all the courts that the issuing of preferred stock is a very convenient and under certain circumstances may be the only practical, means a corporation has of raising the necessary funds to maintain its credit, and may even become necessary to prevent bankruptcy and dissolution. In no event has a preferred stockholder a specific lien upon the assets of the corporation. At most he has but a conditional promise or obligation of the corporation to pay, and in case the corporate business is discontinued, and its affairs are wound up, he, as against the common stock, or inferior classes of preferred stock, may be, and ordinarily is, entitled to preference. He, however, by reason of the right to amend and change the articles of incorporation, takes his stock subject to such right. In the very nature of things, therefore, the issue and sale of preferred stock cannot affect the rights of stockholders, whether holders of common or preferred stock, in a greatly different way than such right is affected by the issue of promissory notes or other unsecured obligations. Such obligations do not, as against the company or its creditors, constitute liens like mortgages.

In the case at bar no one could have doubted the right of the company to secure funds by mortgaging its assets, if it were done in good faith to protect its credit or to further its business interests. Had it done so, appellant's

stock and his right to dividends would have been subject to the indebtedness so created and secured, whether it were large or small. Are his legal rights or the value of his shares of stock affected in a different way or to a greater extent by the issue of the class A stock than would have been the case by the issue of bonds, or even by the giving of promissory notes secured by mortgage upon the property of the company? But the way to obtain necessary funds is not always open to a corporation by mortgaging or pledging its property. Where the corporation is engaged in the mercantile business, it is not always practical to mortgage the stock of goods from which sales are continually made in due course of business. Moreover, such a course at once affects, if not destroys, corporate credit, and this may lead to ultimate insolvency and dissolution. The issue of preferred stock may thus not only be a convenient and practical method of raising the necessary funds to successfully continue its business, but it may be the only practical way out of a dilemma which may threaten the very life of the corporation. There is, therefore, much wisdom, as well as utility, contained in the statute which authorizes a corporation to issue different kinds or classes of stock, and which permits it to amend its articles so as to accomplish that result, where the right was not exercised at the organization of the corporation, or, if exercised, to increase the issue of such stock and to further classify the same. If such a right were denied by the courts, then a rival in business could easily obtain a few shares of stock in any corporation and possibly prevent it from raising the necessary funds to continue in business, and thus he could get the field to himself. If to amend the articles of incorporation so as to issue preferred stock and to classify the same invades a constitutional right, then, of course, a business rival who is a stockholder may prevent the amendment without giving his consent, and no one could complain. If, however, to so amend the articles does not invade such a right, then he may not complain, although it may affect the value of his stock. The latter might be the effect upon his stock in case of a mortgage or other pledge of the corporate property to secure

a debt, and yet no one contends that he could prevent the giving of a mortgage, if necessary to raise funds, and of the necessity to do so the governing body of the corporation, if acting in good faith, would ordinarily be the judge. No one doubts that a majority of the stockholders could authorize a loan and a pledge of the corporate property to secure its payment.

In our judgment, where the right of amendment exists, as under our statute, there can be no distinction between an amendment authorizing the issuance of preferred stock and one which authorizes both the issuance of such stock and the classification thereof. The same legal principle is involved in both cases.

In our opinion, the judgment of the District Court is right, and should be affirmed, with costs. Such is the order.

McCARTY, C. J., and STRAUP, J., concur.