[Civ. No. 1978.   Fourth Appellate District.—October 22, 1936.]

HELLER INVESTMENT COMPANY (a Corporation), Appellant, v. SOUTHERN TITLE & TRUST COMPANY (a Corporation) et al., Respondents.

Stearns, Luce, Forward & Swing for Appellant.

Wright, Monroe, Thomas & Glenn for Respondents.

MARKS, J.—The individual defendants are officers of the corporate defendant. Plaintiff does not complain of the judgment in their favor. We will therefore treat the case as though the corporate defendant were the sole respondent. Plaintiff and defendant are corporations organized under the laws of the state of California. Plaintiff owned four hundred seventy-nine shares of the common capital stock of the defendant which stock had a par value of one hundred dollars a share. The business of defendant was such that it came under the banking department and also the division of insurance of the department of investments of California.

In 1933 the assets of defendant became impaired and in order to enable it to continue in business it was necessary to secure new and additional capital. At that time it had an authorized capital of five hundred thousand dollars, divided into five thousand shares of common stock of the par value of one hundred dollars each. There was issued and outstanding four thousand one hundred shares of this stock.

Proceedings were had to amend its articles of incorporation fixing its authorized capital stock at five hundred fifty thousand dollars, divided into three thousand five hundred shares of common stock of the par value of one hundred dollars each, and eight thousand shares of preferred stock of the par value of twenty-five dollars each. The preferred stock is entitled to receive annual six per cent cumulative

dividends and may be retired after one year from the date of its issue upon payment to its owners of its par value and all accrued and unpaid dividends. Each share of the stock of each class is given one vote so it is apparent that the potential control of the corporation as far as the voting power of the stock is concerned passed from the common to the preferred stockholders.

At the meeting of the stockholders held for the purpose of acting upon the proposed changes in the stock structure of the corporation four thousand seventy-one shares out of the total of four thousand one hundred issued shares were represented. Three thousand three hundred seventy-four shares were voted in favor of the change and six hundred ninety-seven shares against it. The statement is made in the brief of defendant, and it is not disputed, that plaintiff is the only shareholder now opposing the change.

As the number of shares of the common stock were reduced the corporation required the exchange of such stock on the basis of seven-tenths of one share of the new stock for each share of the old stock. Plaintiff refused to make this exchange, demanded the issuance to it of four hundred seventy-nine shares of the new common stock in exchange for its surrender of its like number of shares of the old stock and upon the refusal of defendant to issue the new stock in that amount plaintiff instituted this action to compel its issuance. The trial court gave judgment for defendant and this appeal followed.

The propositions relied upon by plaintiff for a reversal of the judgment may be thus briefly summarized: That defendant cannot take away from plaintiff three-tenths of its capital stock without its consent and without compensation; that the right of a stockholder in a corporation to vote his stock is a property right that cannot be abridged without his consent and without compensation; that the proceedings changing the stock structure of defendant were void as none of the resolutions adopted by either the directors or stockholders in the process of the change required the defendant to first offer for sale the preferred stock to the existing common stockholders before offering it for sale to others; that under subdivision one of section 348a of the Civil Code the defendant cannot force the exchange of stock and that an exchange must be voluntarily made, if made at all.

In arguing the first two assignments of error plaintiff cites sections thirteen and sixteen of article I of the state Constitution, and the fourteenth amendment to the federal Constitution. From plaintiff's argument it would appear that section ten of article I of the federal Constitution would be a more appropriate citation. Plaintiff bases its arguments on the contentions that the proceedings in question deprived it of valuable property rights without compensation and violated a contract between it and the corporation, and, upon the provisions of subdivision one of section 348a of the Civil Code under which the argument is made, that the exchange of a given number of shares of the old stock for a lesser number of shares of the new stock can only be made when voluntary and when it is consented to by all the stockholders. It further argues that the new preferred stock cannot be authorized without. the consent of all the stockholders.

In 1933 the legislature recast the corporation laws of the state of California. (Stats. 1933, chap. 533.) Sections 294, 297, 326b, 348, 348a, 362, 362a and 362b of the Civil Code seem to be controlling here and fully uphold the judgment of the trial court, if they do not violate the provisions of the state or federal Constitutions. It is not suggested that the proceedings taken by defendant to change its stock structure violated any of these code sections, if the exchange of stock need not be voluntary, and, if the directors and stockholders, in the resolutions passed, need not require that the new preferred stock be offered for sale to the existing stockholders before offering it for sale to others. It should be observed that while none of the resolutions required that the preferred stock be first offered to the stockholders, the permit to sell this stock issued by the insurance commissioner contained such a requirement and the stock was actually offered to the common stockholders, none of whom purchased any of it. Pursuant to the permit five thousand one hundred twenty shares of the preferred stock were thereupon sold to others at its par value of twenty-five dollars per share and the full purchase price of one hundred twenty-eight thousand dollars was paid into the treasury of the corporation.

In each of the two Constitutions of California (art. IV, sec. 31, Const. 1849; art. XII, sec. 1, Const. 1879) there

was reserved to the state the right to alter or amend the state laws governing corporations. This reserved power has been frequently discussed and has, without exception, been upheld and construed as giving the state the right to change the contract of a stockholder with a corporation. A late decision of the Supreme Court on that question (*Rainey* v. *Michel*, 6 Cal. (2d) 259 [57 Pac. (2d) 932, 105 A. L. R. 148) would seem to be controlling here and obviate the citation of other California authorities. In 1931 (Stats. 1931, p. 338) the legislature passed an act changing the prior liability of a stockholder in a state bank in relation to payment of the debts of the corporation. The defendant Michel made the same argument that is being made by the plaintiff in the instant case and urged that the Bank Act of 1931 violated the federal and state Constitutions by changing the obligations of the contracts of stockholders who acquired their stock prior to the effective date of the present bank act. In disposing of this contention in the Rainey case the Supreme Court said:

"The next point urged is based upon one of the admitted facts in this case, namely, that all of the stock held by the defendant upon which liability has been imposed, was acquired by him prior to the effective date of the statute—August 14, 1931. It is contended that to impose liability on a stockholder, based upon ownership of stock owned prior to the passage of the statute imposing the liability, is to impair the obligation of the stockholder's contract in violation of article I, section 10, of the United States Constitution, and article I, section 16, of the state Constitution. The contract referred to must be deemed to be the contract between the stockholder and the corporation. The question then is, can the legislature, in the absence of constitutional prohibition, lawfully impose a liability on the ownership of stock, which, when acquired, was not subject to such liability? Section 1 of article XII of the state Constitution, both before and after its amendment in 1930, expressly provided: 'All laws now in force in this state concerning corporations and all laws that may be hereafter passed pursuant to this section may be altered from time to time or repealed.' This section contains a complete answer to the question now being considered, and this is so, even if it be assumed that the laws in force at the time the stock was purchased are

read into and become a part of the stockholders's contract with the corporation, for the very obvious reason that the provision above quoted must be read into the charter of every corporation. The contract between the stockholder and the corporation is subject to the exercise of this reserved power. A case in point is *McGowan* v. *McDonald,* 111 Cal. 57 [43 Pac. 418, 52 Am. St. Rep. 149], an action against the stockholders of a bank under the general stockholders' liability act then existing. The stockholders defended on the ground, among others, that the bank was organized at a time when the statute under which it was formed provided for no such liability as to them. It was held that there was no merit in the defense. Speaking of the power of the legislature to change the contract between the stockholder and the corporation, the court stated (page 66):

" 'It is objected, however, that if the provisions of the Code and Constitution are applicable they impose obligations upon appellants for which they were not liable when they became stockholders, and are in conflict with that provision of the Constitution of the United States which inhibits the states from passing laws impairing the obligation of contracts, and are therefore as to them unconstitutional and of no effect.

" 'The answer to this objection is that the Constitution of 1849 provided: "Corporations may be formed under general laws, but shall not be created by special act, except for municipal purposes. All general laws and special acts passed pursuant to this section may be altered from time to time, or repealed." (Const., art. IV, sec. 31.)

" 'Under the authority thus conferred both the legislature and the people had power to change the law in regard to the liability of stockholders, without violating any provision of the Constitution of the United States.'

"The principles above enunciated are in accord with the decisions of the United States Supreme Court and with the overwhelming weight of authority in other jurisdictions. (*Sherman* v. *Smith,* 66 U. S. (1 Black) 587 [17 L. Ed. 163]; *Barth* v. *Pock,* 51 Mont. 418 [155 Pac. 282]; *Melaven* v. *Schmidt,* 34 N. M. 443 [283 Pac. 900]; *Williams* v. *Nall,* 108 Ky. 21 [55 S. W. 706]; *Somerville* v. *St. Louis Min. & Mill. Co.,* 46 Mont. 268 [127 Pac. 464, L. R. A. 1915B, 811];

*Maxwell* v. *Thompson,* 232 N. Y. 619 [134 N. E. 596]; *Bank of Blytheville* v. *State,* 148 Ark. 504 [230 S. W. 550].)

"It is true that some of the cases cited by the defendant hold that a new liability cannot lawfully be imposed on a stockholder by a legislative enactment passed after he has purchased his stock, but an examination of most of these cases discloses that they were decided in states where, when the stock was purchased, there was no constitutional provision reserving in the legislature the power to alter or amend or repeal the existing laws as to corporations. (See for example, *Yoncalla State Bank* v. *Gemmill,* 134 Minn. 334 [159 N. W. 798, L. R. A. 1917A, 1223]; *Schramm* v. *Done,* 135 Or. 16 [293 Pac. 931]; *Hammons* v. *Watkins,* 33 Ariz. 76 [262 Pac. 616].) Such cases are not in point."

The Constitution of New York contains a provision similar to that found in the Constitution of California reserving to the state the power to change its laws governing corporations. The case of *Hinckley* v. *Schwarzschild & Sulzberger Co.,* 107 App. Div. 470 [95 N. Y. Supp. 357], is of importance here. In that case a corporation having only common stock proposed to issue five million dollars worth of preferred stock. The plaintiff, a dissenting common stockholder, maintained that the preferred stock could not be issued without the unanimous consent of all the stockholders and that doing so violated constitutional provisions protecting the sanctity of contracts. In deciding this question the New York court said:

"It was established in *Dartmouth College* v. *Woodward,* 4 Wheat. 518 [4 L. Ed. 629], that a charter from the state to a private corporation created a contract, and that the Constitution of the United States, which forbids any state passing any law impairing the obligation of contracts, prevented a change by legislative enactment of the charter so issued. It was feared that the operative effect of such holding would be to build up corporate power, which might become so strong as to be a menace to the exercise of governmental powers. To forestall such result, nearly all of the states of the Union have provided, either by statute or constitutional provision, a limitation upon corporate power by reserving the right to alter or repeal the charter granted to any corporation. Such is the provision of the Constitu-

tion of this state (Const. Art. 8, sec. 1), and it had also been the subject of constitutional provision and statutory enactment for a long time prior to the existence of the present Constitution. Does this legislation, therefore, fall within the reserved power of the Legislature to alter or repeal? If it does, the proposed issue of stock is authorized by law. If it does not, there is no authority therefor, save upon the consent of all the shareholders. . . .

"The distinction which exists between issuing an obligation of the corporation for the purpose of borrowing money and issuing preferred stock for the same purpose is that in the latter the charge upon incomes is made perpetual, while in the former it may be discharged by payment. This difference, however, does not militate against the fact that resort may be had to an issue of preferred stock for the purpose of raising money, and that it is practically effectual for such a purpose. The power invoked, treated as a mere method of raising money, is not different from that which authorizes borrowing money in any other form. As we have already seen, the imposition of an additional obligation, the extension of corporate purpose whereby the value of the stock is impaired, and creating inequality in shares of stock, have all been supported as a valid exercise of legislative power, which does not infringe upon vested rights or rights of contract. It cannot be gainsaid but that the issue and sale of preferred stock is a method by which money can be raised, and, when authorized by law, is a perfectly legitimate method of providing a corporation with funds, and, it may be added, is frequently resorted to. The corporation receives the benefit of the money, the proceeds of the preferred stock. . In this increment the holders of the common stock share equally, and each holder of the common stock stands upon an equal plane in respect thereto. It may not be the best method of raising money; but, when authorized by law, it certainly is a method which the corporators may use, and no stockholder would have ground for complaint. Whether it be usually resorted to for such purpose or not is quite beside the question. That is one of power; and, if that exist, whether the method be good or bad is not of consequence. . . . We reach the conclusion, therefore, that this act is a valid exercise of legislative power, and that it applies to corporations existing at the time of its passage."

To the same effect are *Salt Lake Automobile Co.* v. *Keith-O'Brien Co.*, 45 Utah, 218 [143 Pac. 1015]; *General Investment Co.* v. *American Hide & Leather Co.*, 98 N. J. Eq. 326 [129 Atl. 244, 44 A. L. R. 60]; *Wasson* v. *Planters' Bank & Trust Co.*, 188 Ark. 343 [65 S. W. (2d) 528, 90 A. L. R. 141].

In the case of *Page* v. *Whittenton Mfg. Co.*, 211 Mass. 424 [97 N. E. 1006], it appears that the assets of the defendant corporation had become so impaired that it was facing the necessity of either obtaining additional capital or of liquidating. It was decided to reduce the number of shares of common stock and increase the number of shares of preferred stock to obtain the needed capital to enable the corporation to continue in business. The Supreme Court of Massachusetts held the proposed plan legal as it was approved by a majority of the stock as provided in the statute of the state and held that it did not interfere with the rights of the objecting minority stockholders. It was also held that the change in voting power of the common stock did not infringe upon the rights of the old stockholders. See, also, *In re Sharood Shoe Corp.*, 192 Fed. 945.

The case of *Attorney General ex rel.* v. *Looker*, 111 Mich. 498 [69 N. W. 929, 56 L. R. A. 947], involved the right of the state under a reserved power in the Constitution similar to that of California to pass a law changing the voting power of the minority stock in an existing corporation from the power specified in its articles of association. In deciding that question the Supreme Court of Michigan said:

"It is claimed by the counsel that the method of electing the directors of the Michigan Mutual Life Insurance Company was made in pursuance of the statute, and constitutes a contract between the stockholders of the company, which the legislature cannot set aside; and it is asserted that the minority stockholders law changes the contract between the stockholders, and is therefore within the constitutional provision which forbids impairing the obligation of contracts. It would seem to be a complete reply to this view to say that the stockholders knew when they entered this corporation that the constitution reserved to the legislature the right to amend, alter, or repeal the law under which the corporation was organized. The stockholders are as much bound by this constitutional provision as though it was con-

tained in the articles of incorporation. *Parker* v. *Railroad Co.*, 109 Mass. 506. In this case it was said: 'Many cases have arisen in this court involving the construction and application of the power to amend or alter charters. The reservation of power is broad and comprehensive. Whatever may be its limitations, it at least reserves to the legislature the right to make any reasonable amendments, regulating the mode in which the franchise granted shall be used and enjoyed, which do not defeat or essentially impair the object of the grant, or take away any property or rights which have become vested under a legitimate exercise of the powers granted.' *South Bay Meadow Dam Co.* v. *Gray*, 30 Me. 547; *Shields* v. *Ohio*, 95 U. S. 319, 324 [24 L. Ed. 357]. In the case of *Hamilton Gaslight & Coke Co.* v. *Hamilton City*, 146 U. S. 258, 270 [13 Sup. Ct. 90, 36 L. Ed. 963], it was held in an opinion written by Justice Harlan: 'A legislative grant to a corporation of special privileges, if not forbidden by the constitution, may be a contract; but, where one of the conditions of the grant is that the legislature may alter or revoke it, a law altering or revoking, or which has the effect to alter or revoke, the exclusive character of said privileges, cannot be regarded as one impairing the obligation of the contract, whatever may be the motive of the legislature, or however harshly such legislation may operate, in the particular case, upon the corporation or parties affected by it. The corporation, by accepting the grant subject to the legislative power so reserved by the constitution, must be held to have assented to such reservation.' "

■ From the foregoing authorities it seems clear that under the power of control over corporations reserved to the state in the Constitution, the legislature has power to authorize the exact changes that were made in the stock structure of the defendant. We must, then, examine the statutes to determine whether the changes made are authorized by law.

■ The question of the legality of the change of the voting rights of the common and the preferred stock is settled by the provisions of the Civil Code. Sections 348, 362, 362a and 362b of that code authorize and provide the method for amendment of the articles of incorporation of a corporation. The amended articles may reduce the stated capital, change the preferences of or restrictions on any

class of outstanding stock and change its voting power. Section 348a of the Civil Code provides that:

"Adjustment of outstanding par value shares to correspond with the stated capital of a corporation as reduced may be effected; . . . (4) In any other way not repugnant to law."

Section 294 of the Civil Code provides in part as follows: "Stock corporations may issue one or more classes and/or series of shares, any of which classes or series may be with par value or without par value, and with full, limited or no voting rights, and with such other preferences, rights, privileges and restrictions as are stated or authorized in their articles. . . . "

It is clear from the foregoing sections that a corporation may change its corporate stock structure, may increase or decrease its capital stock and may deny to a class of stock any voting privileges. ■■■ As we have concluded that these sections are valid enactments under the reserved power of the Constitution (*Rainey* v. *Michel, supra*) it follows that the defendant corporation was fully authorized to change its corporate structure, decrease the amount of its common stock and issue preferred stock having the potential control of the voting power of the corporation.

■■■ As we have seen, section 348a of the Civil Code provides that there may be an adjustment of the outstanding par value shares of capital stock to conform to a new reduced capital structure "in any other way not repugnant to law". Thus, if the law provides for the compulsory exchange of the old stock for the new, plaintiff's argument that the exchange can only be made when it is voluntary and consented to by all stockholders must fail.

Section 326b of the Civil Code provides in part as follows: "When the articles are amended in any way affecting the statements contained in the certificates for outstanding shares, or it becomes desirable for any reason, in the discretion of the board of directors, to cancel any outstanding certificate for shares and issue a new certificate therefor conforming to the rights of the holder, the board of directors may order any holders of outstanding certificates for shares to surrender and exchange them for new certificates within a reasonable time to be fixed by the board of directors. . . . "

Under the plain language of this section the corporation can enforce a compulsory exchange of the certificates and the argument that the exchange of the old common stock of plaintiff for the new stock must be voluntary must fail.

On the question of the necessity of offering the preferred stock to the stockholders before selling it to others we find that section 297 of the Civil Code provides as follows: "Unless otherwise provided in the articles, the board of directors may issue shares, option rights, or securities having conversion or option rights, without first offering the same to shareholders of any class or classes."

No provision in the articles of incorporation of defendant has been called to our attention which requires its directors to offer to the stockholders any shares of stock before selling any of them to nonstockholders. It follows that it was not necessary to incorporate in the resolutions passed by either the directors or stockholders changing the stock structure, any provision requiring that the preferred stock be offered to the stockholders before selling it to others.

It therefore appears that the legislature has authorized and legalized the exact changes made by the defendant corporation in altering its stock structure. As the lawmakers of the state had the authority so to do under the reserve power in the Constitution, plaintiff has no valid grounds of complaint.

The judgment is affirmed.

Barnard, P. J., and Jennings, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 21, 1936.