FOWER et al. v. PROVO BENCH CANAL & IRRIGATION CO. et al.

No. 6133.   Decided April 19, 1940.   (101 P. 2d 375.)

*Christenson & Christenson,* of Provo, for appellants.

*Elias Hansen,* of Salt Lake City, for respondents.

McDONOUGH, Justice.

This is an appeal from a decree of the District Court which (1) enjoins the Provo Bench Canal and Irrigation Company, hereinafter referred to as the defendant, from entering into, and performing under a proposed contract with the Provo River Water Users' Association, a corporation, whereby the former is to subscribe for stock and thus render its own stock subject to assessment in order to secure water from the so-called Deer Creek Project; and (2) holds that certain amendments to the Articles of Incorporation of defendant (hereafter discussed) were beyond the power of the majority of stockholders to effect.

Defendant is a mutual irrigation company which was incorporated under the laws of the Territory of Utah in 1887. All of its own stock is owned by those who receive water from its canals and ditches. Water is distributed on the basis of shares owned. The irrigation water now distributed is diverted from Provo River and conveyed through canals and ditches to farms in Utah County.

The so-called Deer Creek Project was initiated and is being constructed by the Bureau of Reclamation of the Department of Interior of the United States, to divert water from the Duchesne River watershed into Provo River and to store it in a reservoir, making it available for irrigation in Utah and Salt Lake counties.

The Provo River Water Users' Association is a corporation which has entered into contracts with the United States government to obtain water from the Deer Creek Project.

The present controversy and litigation was precipitated by the action of the directors and a majority of the stockholders of defendant company in proposing and adopting certain amendments to defendant's Articles of Incorporation, and by proposing and adopting a resolution authorizing and directing the Board of Trustees to subscribe for 2,000 shares of the capital stock of the Provo River Water Users' Association.

Plaintiffs are stockholders in defendant company. They maintain (1) that it was beyond the power of the majority stockholders to amend the Articles of Incorporation in the manner proposed; (2) that the majority stockholders were without authority to authorize defendant to enter into a contract to purchase additional water by levying assessments on the stockholders; (3) that the change in the Articles of Incorporation was a "material and fundamental change" which constituted an impairment of contract in violation of the Constitution of Utah and the Constitution of the United States; and (4) that entering into the proposed contract would likewise constitute an impairment of contract.

It is well settled that the Articles of Incorporation of a corporation form the basis of a contract, among others, between the corporation and its stockholders. It is also well settled that "the provisions contained in the Constitution and statutes are as much a part of the articles of incorporation as though they were expressly copied therein." *Weede* v. *Emma Copper Co.*, 58 Utah 524, 200 P. 517, 519; *Salt Lake Automobile Co.* v. *Keith O'Brien Co.*, 45 Utah 218, 143 P. 1015; *Garey* v. *St. Joe Mining Co.*, 32 Utah 497, 91 P. 369, 12 L. R. A., N. S., 554.

Defendant was incorporated in 1887 under the laws of the territory of Utah then in force. By the terms of its Articles of Incorporation its life was limited to a "term of twenty-five (25) years." But in 1910 Article Four, which was the article which limited the life of the corporation to twenty-five years, was amended to read:

"That the corporation herein provided for shall exist for the term of fifty years."

Again in 1937 Article Four was amended to read:

"That the corporation herein provided for shall exist for a term of 100 years, from and after the twenty-sixth day of February, A. D. 1887."

No question has been raised as to the legality or propriety of these amendments so it is presumed that they were validly made and became a part of the corporation's charter.

In Fletcher's Cyclopedia of Private Corporations, Perm. Ed., vol. 7, § 3677, p. 828, we read:

"It has also been held that a constitutional or statutory provision that all charters and grants of or to corporations or amendments thereof shall be subject to amendment or repeal at the will of the legislature unless a contrary intent is expressed, applies not only to subsequent grants of original charters but also to extensions of pre-existing charters, for, while an extension of a charter merely continues the old corporation by giving it additional life, *the giving of additional life to a corporation, beyond the period limited in its charter is a new grant and, in a sense, a new charter.*" (Italics added.)

Supporting this view are *Northern Bank of Kentucky* v. *Stone*, 88 F. 413; *Deposit Bank of Owensboro* v. *Daveiss County*, 102 Ky. 174, 39 S.W. 1030, 44 L.R.A. 825; *Louisville & N. R. Co.* v. *State*, 154 Ala. 156, 45 So. 296. See, however, *Commonwealth* v. *Portsmouth Gas Co.*, 132 Va. 480, 112 S. E. 792; and *State* v. *Baltimore & O. R. Co.*, 127 Md. 434, 96 A. 636.

These cases, however, are not exactly parallel with the instant case, for they are concerned with the question of whether the state which granted the original charter without reserving the right of amendment can later acquire that right, through subsequent legislation, over corporations which seek and obtain extensions of their corporate lives, or accept the benefits of subsequent legislation. We believe that the better rule is that the state can so obtain a right of amendment. And if this is

so, it follows that other incidents of the contracts entered into when a corporate charter is granted are modified to conform with the laws in effect when a corporate charter is extended.

Defendant company, in 1937, sought and received from the state an extension of its corporate life which would have expired in 1912 under the original Articles of Incorporation and would have expired in that year (1937) under the articles as first amended. In effect then, ■ defendant sought and obtained a new charter in 1937. Hence, the laws in force at the time of the extension of the corporate life (1937) formed a part of the contract between the corporation and its stockholders.

Therefore, before considering the specific points raised on appeal, we have determined that the Constitution of Utah, the laws of Utah, and the Articles of Incorporation of defendant company, *all as written in 1937*, constitute the agreement or contract between the corporation and its stockholders which we shall hereafter construe.

The first question to be decided is whether or not the amendment to the Articles of Incorporation empowering the corporation to purchase stock in other corporations, to purchase dams, canals, etc., and to assess its own capital stock "for any and all corporate purposes," etc., was a "material and fundamental change" which altered the original purpose of the corporation.

Section 18-2-44, R. S. U. 1933, reads:

"The articles of incorporation of any corporation now existing or that hereafter may be organized under the laws of this state may be amended in any respect conformable to the laws of this state in such manner and by the vote of such proportion of all or any class or classes of stock as the articles of incorporation may provide; and in case the articles of incorporation do not so provide, by a vote representing at least a majority in amount of the outstanding stock thereof entitled to vote at a stockholders' meeting called for that purpose as prescribed in section 18-2-45; provided, that, if all the stockholders entitled to vote vote in favor of such amendment at any meeting of the stockholders, the notice required by section 18-2-45 need not be given;

and provided further, that the original purpose of the corporation shall not be altered or changed without the approval and consent of all the outstanding stock, but the adding to the purposes or object or extending the power and business of the corporation shall not be deemed a change of the original purpose of the corporation; provided further, that no amendment shall be made which shall have the effect of reducing or of authorizing the reduction of the capital, subscribed or paid in, of the corporation to an amount less than fifty per cent in excess of the indebtedness of the corporation; and provided further, that the personal or individual liability of the holder of full-paid stock for assessments or for the indebtedness or obligations of the corporation shall not be changed without the consent of all stockholders."

The original purpose of defendant corporation is set forth in its Articles of Incorporation, as follows: "Second: That the object of said corporation shall be to convey water from Provo River to Provo Bench and lands adjacent thereto and to regulate and control the same for the purpose of irrigation."

Cases could be cited almost without end on the question of what constitutes a change so fundamental as to alter the original purpose of a corporation. But in the last analysis, each such holding is based on the peculiar fact situation of that case. Indeed, each case must be decided on the facts therein involved. *Perkins* v *Coffin*, 84 Conn. 275, 79 A. 1070 Ann. Cas. 1912C, 1188. Consequently, we refrain from reviewing cases and turn to a consideration of the specific facts of this case.

Defendant corporation is engaged in the business of supplying irrigating water to its stockholders. To accomplish this, it owns certain ditches and diversion works as well as water rights. Its stock is all fully paid but, as is a universal practice of mutual irrigation companies, assessments are levied on its stockholders whenever additional money is needed by the corporation to repair, improve, or expand its diversion and transmission facilities, or for other legitimate corporate expenses. The amendments which we are considering empower the cor-

poration to acquire additional facilities for diverting and transmitting irrigation water, to enter into contracts to acquire water rights, to encumber its property to pay its debts, to purchase stock in other corporations, to purchase its own stock, and to assess its own stock for any and all corporate purposes. In other words, the corporation is enabled by virtue of such amendments, to secure for distribution to its stockholders irrigating water diverted into Provo River under the Deer Creek Project. This change seems to be not only consistent with the original corporate purpose but a logical extension or growth which might have been expected in the corporate activity. We hold such amendments to be in conformity with Section 18-2-44, R. S. U. 1933, which reads in part:

"* * * the adding to the purposes or object or extending the power and business of the corporation shall not be deemed a change of the original purpose of the corporation * * *."

That the water is diverted from another watershed into Provo River before it is withdrawn by defendant is no basis for holding that the water is not conveyed "from Provo River to Provo Bench and lands adjacent thereto." To us it appears that said amendments do not fundamentally change the purpose of the corporation, but rather, they represent a natural and foreseeable development of the business of the corporation in furtherance of its purpose. As more land is cultivated and the demand for irrigating water increases, as engineering science and study develop methods of preserving more of the run-off of water in our mountains and of transmitting and utilizing it for irrigation, and as capital becomes available to execute these projects, it is logical and proper that the business of existing irrigation corporations be expanded to secure and distribute the additional water.

Another problem is whether or not the proper procedure was followed and whether or not a sufficient number of stockholders voted favorably in adopting the amendments

and the resolution. The Articles of Incorporation are silent as to the mode of their amendment and as to the number of stockholders whose vote is required to authorize an amendment, so again we turn to the statute in force in 1937. Section 18-2-44, R. S. U. 1933, reads in part:

"The articles of incorporation of any corporation now existing or that hereafter may be organized under the laws of this state may be amended in any respect conformable to the laws of this state in such manner and by the vote of such proportion of all or any class or classes of stock as the articles of incorporation may provide; and in case the articles of incorporation do not so provide, by a vote representing at least a majority in amount of the outstanding stock thereof entitled to vote at a stockholders' meeting called for that purpose as prescribed in section 18-2-45 * * *."

No question has been raised as to the notice given of the meeting called for the purpose of voting on the amendments, nor as to the certification of the amendments to the Secretary of State, so compliance with Section 18-2-45 (the section prescribing these things) is presumed. It follows, therefore, that a majority vote of the stock outstanding at a meeting called for that purpose was sufficient to amend the Articles of Incorporation. It appears from the record that at the time of the meeting to vote on amendments there were 1954 shares of stock outstanding and that 1029 of these shares were voted in favor of the amendments. This was a clear majority of the outstanding stock.

But plaintiff contends that all of the 1029 shares were not properly voted for the amendments because 639.5 of these shares of stock were at that time owned by the North Union Irrigation Company, and although the Board of Directors of that company purported to vote all of that company's shares in favor of the amendment, it could not properly do so. The basis for this claim is that at the meeting of the stockholders of the North Union Irrigation Company, called to consider the question of voting defendant's stock owned by North Union either for or against the proposed amendments to defendant's

Articles of Incorporation, only 647 of the 1,208 outstanding shares of North Union stock were represented and only 535 of these shares were voted to authorize the board to vote the North Union stock in Defendant in favor of the amendments. The Articles of Incorporation and by-laws of the North Union Irrigation Company are not before us and we have no way of knowing whether or not there are restrictions on what its Board of Directors may do. But in the absense of such restrictions (which we must presume since it was not pleaded) the board was free to exercise its judgment in voting the stock held by the North Union Company and did not need a vote of the stockholders to authorize such action. Our statutes specifically permit an irrigation corporation to hold the stock of another irrigation corporation. Sec. 100-1-13, R. S. U. 1933. Voting the stock is an incident of its ownership. A corporation is an entity the affairs of which are regulated and carried on by a Board of Directors. The action of the Board, intra vires, is the action of the corporation. The stock of defendant owned by North Union Irrigation Company is the property of the latter company and not of the individuals who own its shares. Therefore, when it has been properly determined by the North Union Company (whether by vote of the stockholders or otherwise) what course it will follow, that is the will of the corporation to be executed by its board of directors regardless of the views of the individual stockholders. The argument that the stock should have been voted proportionately with the vote of the individual stockholders of North Union Irrigation Company must be rejected.

Similar to this last point is the one raised by cross-assignment as to whether or not testimony should have been admitted at the trial to the effect that certain individual stockholders of defendant company did not need the additional irrigation water which the Deer Creek Project was intended to supply. We believe that such testimony was properly excluded. The individual needs

of stockholders are immaterial when considered as such. True it is that the needs of the corporation may be reflected in the individual needs of its stockholders, but the will of the corporation is controlling and in this case that will was established by a majority vote of the stock, as well as by the action of the board of directors. A majority of the stock voted to authorize the board of directors to enter the contract to buy stock in the Provo River Water Users' Association and thus secure Deer Creek water. So long as the majority authorizes reasonable and intra vires acts by the corporation, their will is the will of the corporation and determines its actions.

Plaintiffs question the terms of the contract which the Board of Directors entered into on behalf of the corporation. They argue that its terms are unreasonable, that it forces unneeded water on defendant's stockholders, and that it makes defendant a guarantor or surety for the Provo River Water Users' Association. With this we cannot agree. As to whether or not the water is needed, the corporate expression and will has been made. Nor does the contract constitute defendant a guarantor. Defendant simply agrees to pay the purchase price for the stock to which it subscribes, assessments on its stock to cover operation and maintenance and any deficiency caused by other subscriber's default, and to deliver as security a mortgage on its property to guarantee performance. We see nothing unusual nor unconscionable in the contract.

Defendant, as a corporation, agrees to subscribe to stock of the Provo River Water Users' Association. The money which it and other subscribers pay for stock will be used by the Association to fulfill its contract with the United States Government. Indeed, the money is required to be paid to the Association and the United States jointly. It is necessary that a definite amount of money be forthcoming. So, inserted in the contract is a clause providing for assessment on stock if another subscriber defaults on

his subscription or assessment. The association binds itself to use every lawful means to collect defaulted subscription payments and assessments, including refusal to deliver water and forfeiting the stock of the defaulter for the benefit of the remaining stockholders. Defendant simply agrees that the stock in the association which it holds may be assessed up to a given maximum amount if the association needs money for legitimate corporate obligations or purposes. And the provision in the contract for payment of operation and maintenance charges by means of assessments on the shares of stock outstanding merely provides for a procedure which is common, if not universal, in irrigation corporations. Such an agreement does not constitute defendant a guarantor or surety for the association.

Any other points raised by the parties are, we believe, answered by what has been said above. The holding hereinabove to the effect that the laws in force in 1937 at the time of the extension of the corporate life formed a part of the contract between the corporation and its stockholders renders unnecessary a discussion of respondents' contention, and the lower court's conclusion, that the amendments to the articles constitute an impairment of contract in violation of Article 1, Section 18, of the Constitution of the State of Utah, and of Article 1, Section 10, of the Constitution of the United States. No contention is made that legislation subsequent to 1937 is involved in this controversy.

The judgment is reversed and the cause remanded to the District Court of Utah County with directions to make conclusions of law in accordance with this opinion and enter judgment dismissing the complaint. Costs to appellants.

MOFFAT, C. J., and LARSON, and PRATT JJ., concur.

WOLFE, Justice (concurring).

I concur, but with some doubt as to whether in a mutual irrigation company the powers of the corporation are not confined to managing and distributing the water rights

which were turned over to the corporation in exchange for stock, and to managing and distributing such other water as may be acquired by the corporation without objection or by unanimous consent of the stockholders.

What gives me pause is that the real purpose of water appropriators in pooling their interests by turning over their use rights to a corporation for indicia of ownership in the form of stock showing proportionate ownership in the corporation, is essentially not to give the corporation a right either to detract from, or to add to, each stockholder's interest without his consent, but is done as the best means to make common cause in the maintenance of canal systems and distribution of water and also for convenience in transfer of water rights. I think most of the old time settlers conceived of the corporation as a convenience. They thought of it as an association through which they would obtain exactly the same amount of water as they had before, but that the water would be cooperatively managed and distributed. They did not think that the directors or a majority of stockholders could, by increase of the stock, admit more users to the total water nor did they think that the directors, over the objections of stockholders, could obligate them by the purchase of more water. True it is that many mutual irrigation companies have acquired additional water but that may have been because there was either unanimous consent or no objection. Many appropriators might not have exchanged their water rights for stock in a corporation if they had thought that a majority of users might thereafter buy more water, for, although the majority might need more water, certain stockholders might not need any more or might even be unable to put it to beneficial use, and yet be required to take their pro rata share and pay for it. In consequence, I have doubt whether an amendment which permits a purchase of water as in this case, is not an amendment which materially and fundamentally changes the purpose of the corporation. The mere fact that it deals with water, and

even water for irrigation, or further, water for irrigation for lands owned by stockholders, may not be the test.

It is true that the purpose stated by the original articles was to "convey water from Provo River to Provo Bench and lands adjacent thereto and to regulate and control the same for the purpose of irrigation." But it is difficult to see how the object could be otherwise stated even though the purpose was to be confined to water rights owned and conveyed by the appropriators and no more, because such owners might acquire more land on the Bench and desire to transfer the application of their share of water to those lands. Certainly it would not have occurred to the draftsman of the articles specifically to confine the purpose to that of conveying only that water then owned by those who would transfer it for stock. And, indeed, it might have been unwise to do so because, by unanimous consent or without objection, other water might be acquired which would then come within the expressed objects. I suppose the fundamental purpose of a corporation may be changed by unanimous consent, at least so far as the contract between the corporation and stockholders is concerned. In this instance I see nothing inconsistent in the view that the statement of purpose of the corporation does not imply the power to amend the articles to purchase more water.

I am constrained to concur, however, because I can see the practical difficulty of holding that the fundamental purpose of a mutual irrigation company is confined to managing the distribution of only those waters which are conveyed by appropriators in exchange for stock. One stockholder might prevent the acquisition of a small amount of much needed water. It is admitted that the question of whether a change in powers is a material or fundamental one, is subject to considerable variation of reasonable opinion in border line cases. In this case, certainly there is no attempt to change from the purpose of distributing irrigation water to irrigators, to some purpose entirely foreign thereto, nor even to engage in a water venture by the corporation

independant of the lands of its stockholders. If the water was to be acquired to be furnished to a city, or even to develop some new project which the majority of stockholders desired to promote, the case might be different. When variation of opinion is permissible, a balancing of practical considerations may be resorted to in order to arrive at the one best suited to the majority of cases. This impels me to apply the concept that those who turn their property over to a corporation for stock, even though that property be water rights and the object be to receive that same water on the land to which it was thitherto applied, consent to the proposition applicable to corporations in general, to wit: that the majority may amend the articles in such a manner as to add to the original powers of the corporation, even though such amendment be against the wishes of the minority and perhaps detrimental to their interests, so long as the additional power is not one which is not germane to the original objects of the corporation.