

# THE ATTORNEY GENERAL
## OF TEXAS

September 2, 1987

JIM MATTOX
ATTORNEY GENERAL

Honorable David H. Cain  
Chairman  
Committee on Transportation  
Texas House of Representatives  
P. O. Box 2910  
Austin, Texas   78769

Opinion No. JM-782

Re: Whether article III, section 18, or article XVI, section 40, of the Texas Constitution prohibits a member of the Texas House of Representatives from being employed by the Brazos Transit System, a recipient of federal funds

Dear Representative Cain:

You ask whether a member of the House of Representatives may be employed as executive director by the Brazos Transit System, a recipient of state-administered federal grant funds under section 18 of the Urban Mass Transit Act of 1964, codified as section 1614 of Title 49 of the United States Code. You inform us that the Brazos Transit System is also eligible under article 6663c, V.T.C.S., for state funds to match the federal grant, but that it has not received any state matching funds.

You do not ask us to address any specific provision; however, we believe your question requires an examination of article III, section 18, and article XVI, section 40, of the Texas Constitution. Article III, section 18, of the constitution bars members of the legislature from being directly or indirectly interested in any contract with the state or any county "authorized by any law passed during the term for which he was elected." Article XVI, section 40 provides in its last sentence that no legislator

> may hold any other office or position of profit
> under this State, or the United States, except as
> a notary public if qualified by law.

Tex. Const. art. XVI, §40.

Article III, section 18, has been held to prohibit a legislator from entering into a contract with the state authorized by a statute enacted during his term as a legislator. Lillard v. Freestone County, 57 S.W. 338 (Tex. Civ. App. 1900, no writ). This office has determined that article III, section 18, also bars legislators from contracting with the state if they were members of the legislature when the appropriation providing funds for the contract was enacted.

Attorney General Opinion Nos. JM-162 (1984); H-696, M-625 (1970); O-6582 (1943); O-1519; Conference Opinion No. 2411, January 30, 1922.

In the present case, the legislator does not contemplate contracting with the state. He wishes to be employed by the Brazos Transit System which is operated under the Brazos Valley Community Action Agency, a nonprofit corporation established by political subdivisions to receive and administer federal grant funds under various federal programs. See 42 U.S.C. §§9901-9912 (providing for community services grants to states). See also Attorney General Opinion H-1212 (1978) (organization of community action agency under now repealed provisions of Economic Opportunity Act of 1964). The Brazos Transit System receives funds under section 1614(b) of title 49 U.S.C., which establishes a formula grant program for public transportation projects included in a state program of projects "for public transportation services in areas other than urbanized areas." 49 U.S.C. §1614(b). These funds are administered by the State Highway and Public Transportation Department pursuant to section 3 of article 6663c, V.T.C.S. See generally Attorney General Opinion MW-395 (1981) (discussing role of State Highway and Public Transportation Department in administering formula grants). The federal grant funds are appropriated to the Highway Department. See Acts 1985, 69th Leg., ch. 980, at I-97, 98 (budget 104-05). The Brazos Valley Community Action Agency makes application to the Highway Department for the federal grant and receives them subject to its agreement with the Highway Department that it will comply with the statutes, rules and regulations applicable to the grant. Thus, the grant process uses contractual controls to insure that the purposes of the federal law are carried out, and the recipient must contract with the Highway Department to abide by those conditions to receive a grant. This is the "contract with the state" which must be looked at in light of article III, section 18, of the Texas Constitution.

We assume that the legislator in question was a member of the legislature when the federal grant funds were appropriated to the Highway Department to distribute to local transit systems. According to facts provided us, the legislator's pecuniary interest in the contract consists of his salary as executive director of the transit system, an entity which receives the benefit of the federal grant. He is not a party to the contract between the Brazos Valley Community Action Agency and the State Department of Highways and Public Transportation. We do not believe he can be said to be directly interested in this contract.

The facts of this request differ from those at issue in Attorney General Opinion MW-477 (1982), which concerned the interest of city councilmen in federal funds received in an Urban Development Action Grant by the city. The city council contracted on behalf of the city to receive the grant, and then individual council members contracted with the city council in their private capacity as merchants to receive funds under the grant. Attorney General Opinion MW-477 (1982) determined that the city council members were pecuniarily interested

in a contract with the city and that they therefore violated common
law restrictions against conflict of interest as well as city charter
prohibitions against conflict of interest.

The present request also differs from that addressed in Attorney
General Opinion M-714 (1970), where a city councilman accepted the
position of executive director of a community action agency organized
as a nonprofit corporation by the city, county, and school district.
The expense of the executive director's salary was paid in part from
the city treasury.  Article 988, V.T.C.S., at that time barred any
city council member from being interested in any work, business, or
contract, the expense of which was paid from the city treasury.
See Act of March 15, 1975, Acts 1975, 14th Leg., ch. 100, §147, at
113, 154, 8 H. Gammil, Laws of Texas 526 (1898); repealed by Acts
1983, 68th Leg., ch. 640, at 4082.  The employment was expressly
barred by statute.

In the present case, the executive director of the Brazos Transit
System would have no direct interest in any contract with the state.
His interest in his salary with the transit system does not in our
opinion constitute even an indirect interest in a contract with the
state.  The federal grant is forwarded from one level of government to
another, subject at each level to promises to use it according to its
terms and conditions.  By the time any grant funds reach the executive
director as salary, his interest in any contract with the state is too
remote to be considered an indirect interest under article III,
section 18.  See generally Attorney General Opinion M-625 (1970)
(discussing remote or insubstantial interest in a contract).

A recent judicial opinion on article III, section 18, of the
Texas Constitution interprets that provision to give effect to the
intent of the people who adopted it, in light of conditions existing
at that time.  Washington v. Walker County, 708 S.W.2d 493 (Tex. App.
- Houston [1st Dist.] 1986, writ ref'd n.r.e.).  The case arose out of
the appointment of a state legislator as attorney for an indigent
prisoner accused of capital murder.

The trial court directed the county and the state to pay the
appointed attorney $50,000 under article 26.055 of the Code of
Criminal Procedure.  The State Comptroller forwarded to the county
$50,000 in grant funds provided by the Governor's Criminal Justice
Division.  Washington v. Walker County, supra; Attorney General
Opinion JM-287 (1984) (same facts as Washington v. Walker County, but
declining to rule on validity of judicial order).  The county refused
to pay the state funds to the attorney, contending that article III,
section 18 prohibited the payment.  The court in Washington v. Walker
County, 708 S.W.2d 493 (Tex. App. - Houston [1st Dist.] 1986, writ
ref'd n.r.e.), evaluated article III, section 18, as follows:

> Art. III, sec. 18 was intended to prevent
> personal gain and profit by members of the
> legislature as a result of the office they hold.

It was first included in the Constitution of 1876
in response to the graft that occurred during the
reconstruction period following the Civil War.
Tex. Const. art. III, sec. 18, interp. commentary
(Vernon 1984).  The negotiated agreement involved
in the Lillard case was the kind of interest·Art.
III, sec. 18 was intended to prohibit.

Washington v. Walker County, 708 S.W.2d at 496.  The court discussed
the attorney's interest in his appointment to represent an indigent
defendant and concluded that it was not a contract between the
attorney and the state or county merely because the attorney received
the incidental benefit of attorney fees.

The court's remarks on article III, section 18, quoted above, are
relevant to the present inquiry.  The contract between the State
Department of Highways and Public Transportation and the nonprofit
community action agency is not the kind of negotiated agreement that
article III, section 18, was intended to prevent.  The federal govern-
ment establishes the terms upon which its money will be distributed,
and every governmental entity acting as a conduit for the grant funds
agrees to comply with those terms.  The legislature's role is
restricted to authorizing state entities to participate in the federal
program.  See, e.g., Attorney General Opinion MW-395 (1981); H-1272
(1978).  Under the facts presented there is little opportunity for
"personal gain and profit by members of the legislature as a result of
the office they hold."  Washington v. Walker County, 708 S.W.2d at
496.  The opinion of the court in Washington v. Walker County, lends
support to our conclusion that article III, section 18, was not
intended to prohibit a legislator's appointment to the position
of executive director of a transit system which receives state
appropriated federal grant funds.

Article XVI, section 40, of the Texas Constitution provides that

No member of the Legislature of this State may
hold any other office or position of profit under
this State, or the United States, except as a
notary public if qualified by law.  (Emphasis
added).

Tex. Const. art. XVI, §40.  The emphasized language has been held to
prevent a legislator from receiving compensation as an employee of a
state supported junior college, Letter Advisory No. 4 (1973); or a
state university, Letter Advisory No. 153 (1978).  See also Attorney
General Opinion JM-32 (1983).  Attorney General Opinion C-221 (1964),
construing the language of a former version of article XVI, section
33, of the Texas Constitution, concluded that an employee of the
Sabine River Authority held a "position of honor, trust or profit"
under the State of Texas.  Tex. Const. art. XVI, §33 (1876, amended
1972).  The Sabine River Authority, was "a governmental agency of the
State of Texas, a body politic and corporate."  Acts 1949, 52st Leg.,

ch. 110, §1, at 194.  An employee of the river authority was therefore an employee of an agency of the state.

The prior opinions of this office which have construed the phrase "position of profit under this State" or similar language have found it to apply to employees of state agencies and of political subdivisions which can be characterized as agencies of the state.  Cases from other states have limited comparable provisions to employees of state agencies or positions created by state statute.  See Begich v. Jefferson, 411 P.2d 27 (Alaska 1968) (employee of state-operated school system holds position of profit under the state); Wood v. Miller, 242 S.W. 573 (Ark. 1922) ("civil office" under this state" means "under the laws of this state," or by virtue of authority conferred by state as sovereign); State v. Peterson, 369 A2d 1076 (Del. 1976) ("office of trust, honor or profit under this state" includes county officer with right to exercise some part of sovereign power of the state).

The executive director of the Brazos Transit System is employed by a nonprofit corporation.  He is not an employee of a state agency or of a political subdivision acting as an agency of the state to carry out a state policy locally.  His employment is not created "under state law."  Cf. Cassiano v. Amigos del Valle, Inc., 776 F.2d 1300 (5th Cir. 1985) (nonprofit corporation which uses federal funding to provide services for the elderly was not acting "under color" of state law).  Article XVI, section 40, does not bar him from serving as executive director of the Brazos Transit Authority.  See Attorney General Opinion H-1304 (1978) (legislator not necessarily barred from receiving federal funds as officer of corporation which receives federal contract payment or grant).  See also V.T.C.S. art. 6252-9b, §§7, 8; Attorney General Opinion H-696 (1975).

## S U M M A R Y

A member of the House of Representatives is not prohibited by article III, section 18, or article XVI, section 40, of the Texas Constitution from being employed by the Brazos Transit System, a recipient of federal funds administered by the State Department of Highways and Public Transportation.

Very truly yours

JIM MATTOX
Attorney General of Texas

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General